## PACIFIC AUTOMOBILE INS. CO. v. COMMERCIAL CASUALTY INS. CO. OF NEW YORK.

No. 6826.   Decided August 6, 1945.   (161 P. 2d 423.)

See 31 C. J. S., Evidence, sec. 78; 29 Am. Jur., 172.

*Irvine, Skeen & Thurman,* of Salt Lake City, for appellant.

*Zar E. Hayes* and *Arthur H. Nielsen, both* of Salt Lake City, for respondent.

LARSON, Chief Justice.

The facts agreed to by the parties are as follows: The Fisher Brewing Company had a policy of insurance with plaintiff to protect it against liabilities imposed upon it by law for damages sustained on account of the acts of its employees arising out of the ownership or use, including the loading and unloading of the trucks of insured. The Brewing Company also had a policy of insurance with defendant to protect it against liabilities imposed by law except liabilities arising out of the ownership or use or the loading or unloading of the trucks.

At the time of the accident in question, employees of the Brewing Company were delivering beer to a restaurant. They parked at the curb, took the kegs of beer off of the truck and placed them on the sidewalk. One of the employees then went in through the building and opened a manhole or trap door in the sidewalk, through which the kegs of beer were lowered into the basement of the building by means of an elevator. While the beer kegs were being taken into the basement, one Dayton, a blind man, walking along the sidewalk, fell into the open manhole. Plaintiff paid Dayton's claim against the Brewing Company and then filed suit against the defendant to recover the sum so paid. Judgment in the district court was in favor of plaintiff. Defendant appeals. The question for determination is: Under the policies of insurance here involved, was the lowering of the kegs into the basement a part of the process of unloading the truck?

Defendant argues that the accident occurred during the unloading of the truck and therefore could not be covered by the provisions of its policy. The so-called "loading and

unloading" clauses in insurance contracts have been frequently considered and construed by the courts ■■ and various rules have been stated. Practically all authorities are agreed that in such insurance contracts the phrase "including loading and unloading" is a phrase of extension. It expands the expression "the use of the truck" somewhat beyond its connotation otherwise so as to bring within the policy some acts in which the truck does not itself play any part. It deals with a period when the truck itself is at rest, but the goods are being moved onto or off the truck. *American Oil & Supply Co.* v. *United States Casualty Co.*, 18 A. 2d 257, 19 N. J. Misc. 7. So, too, in policies insuring only actual operation, a phrase "excepting therefrom loading and unloading" is a phrase of limitation, and serves the purpose of apprising the parties that the word "use" in such policy is to be held to a narrow construction so it will not be construed to cover liabilities from acts in which the truck was not directly connected with the process from which the accident resulted. *Stammer* v. *Kitzmiller*, 226 Wis. 348, 276 N. W. 629. Other courts have held that policies covering the "ownership, maintenance, operation and use" of trucks, but in which policy there was no reference to "loading" or "unloading" should be so construed that the word "use" would include and cover loading and unloading operations. *Luchte* v. *State Automobile Mutual Ins. Co.*, 50 Ohio App. 5, 197 N. E. 421; *Panhandle Steel Products Co.* v. *Fidelity Union Cas. Co.*, Tex. Civ. App., 23 S. W. 2d 799. A study of the cases reveals that courts have used various rules or stated various tests in determining the situations or territory to be covered by "loading and unloading" clauses.

Some courts apply the "coming to rest" rule or doctrine. Briefly stated, that rule is that "unloading" includes the process of removing or lifting the article from the truck up to the point where the article is first set down or ceases in the movement which took it from the truck. This doctrine is well stated in *Stammer* v. *Kitzmiller*, supra, a case very similiar to the one at bar. There the employees had finished

putting the beer into the purchaser's basement and were having the sales slip signed by the purchaser at the time the party injured fell into the unguarded manhole. Under two policies of insurance similar to the ones here involved, the question arose. Speaking of the loading and unloading clause, the court said [226 Wis. 348, 276 N. W. 631]:

"* * * [it] does not carry the liability of the insurer beyond what may be described as the natural territorial limits of an automobile and the process of loading and unloading it. When the goods have been taken off the automobile *and have actually come to rest*, when the automobile itself is no longer connected with the process of unloading, and when the material which has been unloaded from the automobile has plainly started on its course to be delivered by other power and forces independent of the automobile and the actual method of unloading, the automobile then may be said to be no longer in use. * * * where, as here, the merchandise had been removed from the truck and considerable time had elapsed after anything was done which could reasonably be said to be connected with the actual unloading, there is no difficulty in limiting the responsibility of the insurer who covers loading and unloading operations. * * * While the open hatchway may have been a convenience in the process of further delivery of the goods, it was not, under the facts with which we are dealing, included in the process of unloading the truck. * * *" (Italics and bracket added.)

By the same process of reasoning, "loading" would cover only the operation from the ground, platform or hand truck or dolly onto the truck after the goods had been brought to the truck, and arranging the goods in the truck.

Some cases applying this doctrine have expressed the view that the terms "loading" and "unloading" are not to be limited or controlled by place or distance but by the fact of a continuous and uninterrupted movement of the articles in getting them onto or off from the truck. Under this view "loading" covers the period of time and events beginning when the articles are started in movement which movement is not interrupted or broken by rest or pauses until the articles are placed in or on the truck. So, too, under these cases "unloading" includes all events commencing when the articles are started in movement to take them from the

truck and ending the first time such movement stops, or is interrupted by the articles being brought to a stationary position. A case so applying the doctrine of what we may call the continuous passage or movement rule is *St. Paul Mercury Indemnity Co.* v. *Standard Accident Ins. Co.*, 216 Minn. 103, 11 N. W. 2d 794, 796. In that case furniture was being moved from one building to another, three crews of men being used. One crew moved the furniture out and placed it upon the truck, another packed it in the truck and at destination unpacked and moved it to the tail-gate of the truck, and a third crew took the furniture from the truck, placed it on the sidewalk and then carried it from the truck up a ramp into the building. The injury occurred through a defect in the ramp. The Court said:

"The 'use' of an automobile ceases when the goods have been removed therefrom and * * * subsequent handling and transportation constitute ordinary delivery to the customer in the course of the insured's business. * * * Our conclusion is that the goods were unloaded in the instant case when they were removed from the truck and placed upon the sidewalk and that unloading did not include the subsequent handling and transportation of the same from the sidewalk into the building. * * *"

A similar holding was given in *Jackson Floor Covering, Inc.* v. *Maryland Cas. Co.*, 117 N. J. L. 401, 189 A. 84, wherein it was said that an automobile policy did not cover transportation of goods after removal from the insured vehicle to complete delivery thereof to the customer either by manual carriage by the driver, either along or with the aid of a helper, or by use of some other kind of conveyance, such as a hand truck.

Other courts have adopted what may be called the complete operation rule. Tersely, this includes as "loading" or "unloading" the entire process involved in the movement of the articles from the place where insured's employees find the articles which are to be moved by truck, to the place where the employees of insured turn them over to the party to whom they are to make delivery. This rule is well stated by the Montana court in *State* v. *District Court*, 110 Mont.

250, 100 P. 2d 932, 934, a case differing from the instant one only in the fact that the person injured was standing on the door of the manhole when it was raised. The court said:

"We hold that under the facts here presented the unloading of the truck was a continuous operation from the time the truck came to a stop and the transportation ceased until the barrel of beer was delivered to the customer. The unloading of the truck cannot be said to have been accomplished when the barrel of beer was placed upon the sidewalk. As well might it be argued that the loading of the truck consisted merely of the act of lifting commodities from the ground to the body of the truck. The loading of the truck would contemplate much more than that. It would embrace the entire process of moving the commodities from their accustomed place of storage or the place from which they were being delivered until they had been placed on the truck. So, too, the unloading thereof embraced the continuous act of placing the commodities where they were intended to be actually delivered by the use of the truck. This being so, the insurance company policy has application. * * *"

In *American Oil & Supply Co.* v. *United States Casualty Co.*, supra, it was held that when the employee lifted the goods off the body of the truck and carried them directly to the place where they were to be delivered, setting the goods down within the purchaser's place of business was still a part of unloading the truck, and covered by a loading and unloading clause. To the same effect is *Maryland Casualty Co.* v. *Tighe*, D. C., 29 F. Supp. 69, wherein the court held that an employee carrying vegetables from a truck to the purchaser's house was in the process of unloading.

Then there are other cases which base their holding on the relationship between the truck and the accident, that is, that the use of the truck was a factor or element in causing the accident. Such a case is *Caron* v. *American Motorists Ins. Co.*, 277 Mass. 156, 178 N. E. 286, 287, wherein it was held that an insurance policy did not cover injuries to a pedestrian who slipped on a piece of ice which had fallen to the street from the insured truck. At the time of the accident the truck was stationary, and the court said that the injury

"had no connection with the motor vehicle. [That] the injury * * * might as well have resulted from such conduct in connection with a horse-drawn or hand-pushed vehicle."

To the same effect is *United States F. & G. Co.* v. *Breslin,* 243 Ky. 734, 49 S. W. 2d 1011, wherein it was held that an accident resulting from sand falling from a truck to the sidewalk was not covered by the insurance policy. Also *Luchte* v. *State Auto. Mutual Ins. Co.,* supra, to the effect that collision with a pile of coal dumped in the street from the insured vehicle is not covered by the policy. *Handley* v. *Oakley,* 10 Wash. 2d 396, 116 P. 2d 833, is also upon this theory. There the truck was being used as a stationary depot for selling ice cream at a baseball park. One of the patrons standing in line to purchase ice cream was struck by a foul ball. It was held that such use of the truck did not come within the "unloading" provisions of the policy because the accident had nothing to do with the truck or the use thereof. The truck was not being used as a motor vehicle but as a place of business. The court quoted from *Zurich General Accident, etc., Co.* v. *American Mut. Liability In. Co.,* 118 N. J. L. 317, 192 A. 387, 388. In that case the driver of the insured truck had delivered a can of milk to one Borer and was putting the milk in Borer's ice box. Borer came in contact with an ice pick carried in the driver's back pocket and sustained an injury. The court's holding on the question of coverage under the unloading clause is stated thus:

"The contracting parties plainly contemplated an accident immediately identified with the ownership, maintenance, use, or operation of the vehicle; and the mishap which befell Borer does not fall into that category. * * *"

This thought should be kept in mind by courts in construing such policy provisions. An insurance contract like any other contract must be interpreted in the light of the intention of the parties. Discussing this matter in *St. Paul Mercury Indemnity Co.* v. *Standard Acc. Ins. Co.,* supra, the court said:

"In a sense, automobile risks are incidental to the operation of a business, but for purposes of insurance coverage they are dealt with as a separate class. The policies covering such risks relate to the hazards involving the automobile itself. The line is drawn between risks incident to the general business and those incident to the automobile while being used to accomplish limited operations involved in such business. Delivery involves operations not included in the use of an automobile to transport goods. It involves both general business and automobile risks. Risks incident to 'unloading' an automobile pertain to the vehicle, not to the general business of the insured."

Other cases discussing the use of the truck and connection thereof to the injury are *Ocean Acc. & Guar. Corp.* v. *J. B. Pound Hotel Co.*, 69 Ga. App. 447, 26 S. E. 2d 116, holding that a pool of oil leaking from load of oil-tank truck was not incident to the motor vehicle; *Mullen* v. *Hartford Acc. & Indemnity Co.*, 287 Mass. 262, 191 N. E. 394, holding that oil leaking from the crank case of a truck is related to the truck and therefore the injury caused by slipping in the oil is covered by the insurance policy; *Owens* v. *Ocean Acc. & Guar. Corp.*, 194 Ark. 817, 109 S. W. 2d 928, holding that a patient being carried to insured's ambulance on a stretcher was covered by policy insuring for damages arising out of "ownership, maintenance, and use" as such operation was a necessary transaction in connection with use of the insured vehicle as an ambulance; *Maryland Cas. Co.* v. *United Corp. of Massachusetts*, D. C., 35 F. Supp. 570, 572, holding that oil explosion caused by leak in apartment house storage tank is not covered by "loading and unloading" clause, as there is no causal relation between accident and the vehicle or its unloading; *Quality Dairy Co.* v. *Ft. Dearborn Cas. Underwriters*, Mo. App., 16 S. W. 2d 613, holding that accident caused when a wagon being drawn by the insured truck broke loose, was covered by the policy because there was a direct causal connection to the operation of the truck. *Franklin Co-op. Creamery Ass'n* v. *Employers' L. A. Corp. Ltd.*, 200 Minn. 230, 273 N. W. 809, 810, is another case applying the rule of relationship to use of the vehicle. In that case the driver of the insured vehicle had entered

a building with a case of milk and was proceeding to distribute it to individual customers. He injured an employee by his use of the freight elevator. The court said:

"Necessarily the unloading of a great variety of merchandise involves various situations resulting in various holdings as to when the process of unloading terminates. Within limits each case must stand on its own facts. This one stands outside the terms of the unloading clause of the policy. And it stands even further without the 'operation, maintenance and use' clause. The operation of the freight elevator wholly within the building and remote from the wagon, solely for the driver's convenience in ascending to the third floor, had nothing whatever, in our opinion, to do with 'use' of the teams or vehicles."

While not all of the cited cases involve insurance policies having "loading and unloading" clauses, in all cases the policy either defines the "ownership, maintenance and operation" for which the vehicle is insured to include loading and unloading, or else the courts have interpreted such phrase to be so inclusive.

To summarize, certain general rules may be stated from the foregoing authorities:

1. The intention of the parties to the insurance contract should be kept constantly in mind by the court in determining the scope of coverage brought within "loading and unloading" clauses or "ownership, maintenance and operation" clauses.

2. Loading and unloading include more than mere placing the goods on the truck or removal of the goods from the truck, so that when they are taken directly from the truck, and in one continuous operation carried into the customer's place of business, they are still in the process of being unloaded when set down therein.

3. There must be some causal relationship between the use of the insured vehicle as a vehicle and the accident for which recovery is sought.

In the light of these deductions let us examine the instant case. The policy written by plaintiff insures the Brew-

ing Company against loss sustained by injury to persons not employees of the Brewing Company and to property "caused by accident and arising out of the ownership maintenance and use of the automobile." The policy then provides:

"The purposes for which the automobile is to be used are Commercial Delivery only. * * * Use of the automobile for the purposes stated herein includes the loading and unloading thereof."

In other words, plaintiff undertook to insure the Brewing Company against loss due to accident arising from the loading, operating and unloading of the automobile in the business or operation of making commercial deliveries. On the other hand, the defendant by its policy undertook to keep the Brewing Company harmless against loss due to accidents arising out of the operation of its business, if such accident did not arise out of the ownership, maintenance or use, which includes loading and unloading, of any automobile, for any purpose whatsoever. It is conceded that the policies together afforded the Brewing Company a complete public liability coverage. What was the intention of the parties as to coverage as that intention is indicated by the policies?

The policy of plaintiff was written, not to cover the trucks, not to protect the trucks, but to protect and cover the risks of the Brewing Company's business in the operation of its trucks. The policy specifies that the truck is to be used only in the business of the Brewing Company, including loading and unloading of the trucks in making commercial deliveries. Commercial delivery as a matter of common knowledge includes taking the articles from their usual place of storage or assembly to the place of destination and turning them over to the control or possession of the purchaser or receiver. Sometimes delivery may be made by depositing things on the sidewalk or on a platform or other convenient place. That, however, is usually indicated by the custom of the business or agreement of the parties. Normally a delivery is not completed until the deliveror has finished his handling of the article,

has completed his assignment or task of putting the articles into the possession of the receiving party.

The policy issued by defendant expressly excluded from its coverage losses arising out of the use of trucks, including loading and unloading and delivery of goods. Examination of the policies of both companies leads directly to the conclusion that the language "loading and unloading" expanded the meaning of "use" of the vehicle to cover all the activities necessarily involved in making commercial delivery according to the practice in delivering.

The necessary causal relationship between the use of the truck and the accident is apparent in the fact that the accident occurred in the course of making a commercial delivery in which delivery the use of the truck was an active factor or element.

We conclude that the proper rule of construction of policies such as here involved is that the mission, or transaction, or function being performed by the insured's employees at the time of the accident is the controlling element in determining whether the situation from which the accident occurred is included in loading and unloading. The job being performed here, that part of the insured's business functioning at the time of the accident was that of making a proper commercial delivery. The policy of plaintiff included and the policy of defendant excluded the business of making commercial deliveries. Both policies treat the "use of the truck" as expanded to cover all activities involved not only in transporting and hauling, but in doing all things in getting the articles onto the truck and off the truck, which were necessary and proper in making and completing the commercial delivery of the goods—all things which insured's employees were required to do in making delivery of the beer, and in which the truck was involved as one of the media of transport.

Since the accident out of which this action grew was the result of acts and conduct of the employees of insured while engaged in making a commercial delivery, which was the purpose for which, and the field over which the policy of

plaintiff was written, and was the field of liability which defendant's policy specifically excluded, it must follow that the judgment of the district court is in error.

Judgment reversed. Costs to appellant.

McDONOUGH, TURNER, and WADE, JJ. Concur.

WOLFE, Justice (concurring).

I concur. T assume the opinion would have reached the same result had the employees of the restaurant opened up the doors to the vault in the sidewalk. The result would have been the same if Dayton had been injured by one of the beer kegs rolling away and striking him. I mention this because the "accident out of which this action grew," it might be argued, would not in the strictest sense be "the result of acts and conduct of the employees of the insured while engaged in making a commercial delivery" if the opening of the doors was done by the employees of the restaurant. I think that if liability for damage was imposed by law upon the insured by reason of an injury proximately caused by an occurrence arising out of or in the course of the mission, transaction or function of delivering the goods by insured's employees, the plaintiff would have been liable under the terms of the policy issued by it according to the reasoning of the opinion. I therefore concur.