CONNECTICUT INDEMNITY CO. v. LEE et al.

No. 4327.

Circuit Court of Appeals, First Circuit.

June 14, 1948.

Alexander B. Way, Jr., of Boston, Mass., for appellant.

Maurice P. Neiman, of Boston, Mass., for appellee Benjamin Bernhardt.

Dana J. Kelley, of Boston, Mass., (Norman F. Fermoyle, and Henry Hellyer, both of Boston, Mass., on the brief), for appellee Massachusetts Bonding & Ins. Co.

Before MAHONEY and WOODBURY, Circuit Judges and PETERS, District Judge.

MAHONEY, Circuit Judge.

This is an appeal from a declaratory judgment entered in an action brought under § 274d of the Judicial Code, 28 U.S. C.A. § 400, by the Connecticut Indemnity Company, a Connecticut corporation doing business in the Commonwealth of Massachusetts, against John M. Lee (an individual doing business as Lee's Express), George Nicholson, and Benjamin Bernhardt, all citizens of the Commonwealth of Massachusetts, and the Massachusetts Bonding and Insurance Company, a Massachusetts corporation, for a determination of the question whether the policy of in-

surance issued by the plaintiff to Lee's Express covers an accident in which Bernhardt suffered personal injuries.

The plaintiff had issued a Massachusetts motor vehicle liability policy in the name of Lee's Express, effective for the calendar year 1946, to apply as the interest of Lee's Express might appear, to certain specified motor vehicles. Under Insuring Agreement 1, Coverage A of the policy, the plaintiff agreed "to pay on behalf of the Insured in accordance with the 'Massachusetts Compulsory Automobile Liability Security Act' [G.L.Mass.(Ter.Ed.) c. 90, § 34A et seq.; c. 175, § 113A et seq.] * * * all sums which the Insured shall become obliged to pay by reason of the liability imposed upon him by law for damages to others for bodily injury * * * caused by the ownership, operation, maintenance, control or use of the motor vehicle upon the ways of the Commonwealth of Massachusetts." Under Insuring Agreement 1, Coverage B, which was an optional coverage, the plaintiff agreed "to pay on behalf of the Insured * * * all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages * * * sustained by any person [in Division 1, 2 and 3] caused by accident and arising out of the ownership, maintenance or use of the motor vehicle." Division 3 of Coverage B includes any person other than a guest occupant, whether on or off the ways of the Commonwealth of Massachusetts. Item 5 of the Declarations which form a part of the policy, states that "The purposes for which the motor vehicle is to be used are Commercial * * * (b) The term 'commercial' is defined as use principally in the business occupation of the named Insured * * *. (c) As respects coverages (B) and (C) use of the motor vehicle for the purposes stated includes the loading and unloading thereof."

The Massachusetts Bonding and Insurance Company had issued a public liability policy to Lee's Express, effective from April 15, 1945 to April 15, 1946. The company agreed "to pay on behalf of the Insured, all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages * * * because of bodily injury * * * sustained by any person or persons, caused by accident and arising out of the Hazards hereinafter defined." Lee's Express was afforded coverage under Division 1 of Definition of Hazards which includes ownership, maintenance or use of the premises described in the policy and all operations necessary or incidental thereto. An Exclusion Clause provides that "This policy does not apply : (a) Under Division 1 of the Definition of Hazards, to aircraft * * * or to * * * vehicles of any kind other than hand trucks * * * or the loading or unloading thereof, while away from the premises, unless specifically declared and described in this policy * *."

On March 28, 1946, George Nicholson, who was employed by Lee's Express as a truck driver, operated a truck belonging to that company to a point on Summer Street, a public highway in the City of Boston, and stopped the vehicle in front of a building occupied in part by Frank G. Shattuck Company, known as Schrafft's. Nicholson stopped the truck for the purpose of making deliveries of merchandise to Schrafft's. The truck was stopped with its right side close to and parallel with the curbstone adjacent to 11 Summer Street, which is the number of the store occupied by Schrafft's. It was the intention of Nicholson to make delivery of the merchandise by means of an elevator which opens on to the sidewalk in front of the premises. The doors over the elevator, when closed, form a part of the public sidewalk. At a point near the elevator and on the outside wall of the premises is a bell button which when pressed notifies some one in the basement of Schrafft's store that the elevator is wanted. This person in turn throws a switch releasing a guard which allows the person on the sidewalk to open the doors. When the doors are open the elevator can be raised so that the platform of the elevator is even with the sidewalk. Nicholson got out of the truck, crossed the sidewalk adjacent to Schrafft's store, and pressed the bell button. The guard was released and after opening the doors Nicholson crossed the sidewalk and went to the rear of the truck for the purpose of getting boxes of merchandise from

the truck. While Nicholson was in the act of picking up a box of merchandise from the truck, he heard a noise, looked up, and saw that one door was going down and the defendant Bernhardt was falling head first into the elevator well.

Bernhardt brought suit in the Superior Court for Suffolk County, Massachusetts, against Lee's Express and Nicholson to recover damages for the personal injuries suffered by him as a result of the fall, and they called upon the Connecticut Indemnity Company, the plaintiff herein, to defend them. The Connecticut Indemnity Company then brought this action in the federal district court. It asked the court to declare that the relation of insurer and insured does not exist between it and Lee's Express and Nicholson, as to any liability on their part arising out of the accident, and that it does not have the right nor obligation to defend the state court action or to indemnify the defendants therein for any loss. The Massachusetts Bonding and Insurance Company, which was joined as a party defendant by the plaintiff, filed an answer denying that the plaintiff's policy does not cover the accident, and praying the court for a declaration that its policy does not cover the accident and that the plaintiff's does. The plaintiff in reply asked the court to determine that the policy issued by the Massachusetts Bonding and Insurance Company covers the accident. The district court, applying Massachusetts law, determined that there was a causal relation between the lifting of the elevator doors and the unloading of the truck. It held that the relationship of insured and insurer exists between the defendants, Lee's Express and Nicholson, and the plaintiff, and does not exist between them and the Massachusetts Bonding and Insurance Company. It entered judgment accordingly.

■■ Although not urged by any of the parties, the question of federal jurisdiction must be determined. Jurisdiction in the plaintiff's action is founded on diversity of citizenship between it and all the defendants, it being a Connecticut corporation, and the defendants being either citizens of Massachusetts or Massachusetts corporations. The Massachusetts Bonding and Insurance Company by its "answer" asked for a declaration that its policy does not cover the accident. Its interest in this respect is thus adverse to the interest of Lee's Express and Nicholson; yet there is no diversity between them. But it seeks a declaration of its rights in regard to the same transaction or occurrence that is the subject matter of the plaintiff's action. Cf. Moore v. New York Cotton Exchange, 1926, 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370. The same factual and legal issues are involved. To settle the controversy between the plaintiff and Lee's Express and Nicholson, it is necessary to determine whether the accident arose out of the unloading of the truck. The finding on this issue will also determine whether the Massachusetts Bonding and Insurance Company's policy covers the accident. A decision in favor of one insurance company amounts to a decision against the other. We have no trouble therefor in holding that the Massachusetts Bonding and Insurance Company's claim arises out of the same transaction and is ancillary to the main action so that no independent jurisdictional grounds are required. See Moore's Federal Practice, § 13.08 (1938) and (Supp.1947), and cases cited.

■ On the merits the only issue presented is whether the accident arose out of the loading and unloading of the truck. If it did, the plaintiff is the insurer; if it did not, the Massachusetts Bonding and Insurance Company is. Although the "ownership, operation, maintenance, control or use" clause has often been interpreted by the Massachusetts courts, no decision concerning the loading and unloading clause by a Massachusetts court has been cited to us, nor have we found any.[1] In General Accident Fire & Life

---

[1] Since a question of substantive law is involved, Erie R. R. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, is of course applicable. And doubtless the Massachusetts courts would apply Massachusetts law in interpreting the contracts, since the contracts were made in Massachusetts in accord with the Massachusetts law, and were to be performed in Massachusetts.

Assur. Corp. v. Hanley Oil Co., 1947, 321 Mass. 72, 72 N.E.2d 1, 171 A.L.R. 497, the Massachusetts Supreme Judicial Court stated that it need not determine whether the provision in the policy that use includes loading and unloading added to the coverage since under the facts of the case the maintenance or use clause sufficed to cover the accident. But it has been generally held in other jurisdictions, that the loading and unloading clause does extend the coverage. See Pacific Automobile Ins. Co. v. Commercial Cas. Ins. Co., 1945, 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251. It is important, therefore, to examine the Massachusetts decisions to see how far Massachusetts has extended coverage of the operation and use clause, as well as to determine the general principles of interpretation followed in Massachusetts in regard to automobile liability policies.

In Caron v. American Motorists Ins. Co., 1931, 277 Mass. 156, 178 N.E. 286, the operation and use clause was held not to cover an accident which occurred when a person slipped on a small piece of ice which had fallen off an ice truck. The court said that the accident resulted from the conduct of the person disposing of the contents of the truck; that transportation had ceased; and that the ice had come to rest on the street. It no longer had any connection with the vehicle. The accident might be considered one of the usual incidents of the delivery of ice, but it had no particular connection with the motor vehicle as such. This case, although distinguished and perhaps limited by later cases, was followed recently in Perry v. Chipouras, 1946, 319 Mass. 473, 66 N.E.2d 361. There cardboard boxes were being removed from a truck and being stacked on the sidewalk preparatory to being carried into the building. The person who was stacking them negligently allowed some ropes which were in the boxes to fall on the sidewalk. A pedestrian stumbled over one of these and was injured. The court held that the presence of the rope, even though negligently dropped during unloading, was too remote from the operation and use of the truck. The court pointed out that at some point in the train of event articles which

have been the subject of transportation must be considered disassociated from the ownership, maintenance, or use of the vehicle. The place to draw that fine line was held to be at the point where the rope came to rest on the sidewalk.

In Mullen v. Hartford Accident & Indemnity Co., 1934, 287 Mass. 262, 191 N.E. 394, an accident which occurred when a pedestrian slipped on oil which had leaked from an automobile was held to be within the coverage of the standard Massachusetts motor vehicle policy, although the car had been moved from the place where the oil had leaked prior to the time of the accident. The court distinguished the Caron case by pointing out that there was a necessary connection—an intrinsic relationship—between the oil and the car which was not found between the ice and the truck.

A somewhat different situation was presented in Kennedy v. Consolidated Motor Lines, Inc., 1942, 312 Mass. 84, 43 N.E.2d 121, 125. There an injury occurring to a person while he was helping to load a barrel on a truck by means of a rope attached to the truck was held to arise out of the operation of the vehicle. In Diggins v. Theroux, 1943, 314 Mass. 735, 51 N.E.2d 425, the cause of action of a person injured while helping to load a show case on a truck was held to arise out of the operation of the truck.

In General Accident Fire & Life Assur. Corp. v. Hanley Oil Co., supra, which is apparently the latest interpretation by the Massachusetts Supreme Judicial Court, a motor truck pumped oil into a tank located in the cellar of a building. The oil overflowed on the cellar floor, and several hours later it ignited and the house was burned.

The court held that the harm arose out of the use of the vehicle and was therefore covered by the standard Massachusetts policy. The court said the line beyond which damage could not be said to arise from the use of a vehicle could not be drawn at the point of time the oil reached the floor, since the oil was a continuous agency for harm. The case was considered

analogous to cases where the injury was done by an object in motion out of a vehicle.

Massachusetts, even in cases where no loading or unloading clause was involved, has given a broad interpretation to automobile liability insurance policies, extending them to cover many situations which might be considered connected more with unloading than with operation or use. The cases emphasize the necessity, however, for some causal relation between the use of the vehicle and the injury. They also indicate that generally an article is no longer connected with the use or operation of a vehicle if it has come to rest.

Cases in other jurisdictions construing loading and unloading clauses are numerous. In Pacific Automobile Ins. Co. v. Commercial Cas. Ins. Co., supra, the facts were similar to those in the case at bar in that a pedestrian was injured when he fell down an elevator well in the sidewalk. It differs from this case, however, in that the articles there being unloaded had already been taken off the truck and placed on the sidewalk when the accident occurred. It was held that the loading and unloading clause covered the accident. The same result was reached on similar facts in State ex rel. Butte Brewing Co. v. District Court, 1940, 110 Mont. 250, 100 P.2d 932. Stammer v. Kitzmiller, 1937, 226 Wis. 348, 276 N.W. 629, which again involved almost substantially the same facts reached a contra result.

■ These few cases give some indication of the conflict that has developed in various states as to the scope of the loading and unloading clause. Detailed discussion of the numerous cases from other jurisdictions can aid little in the solving of the problem due to the diversity of opinion. For a collection of these cases see Pacific Auto Ins. Co. v. Commercial Casualty Ins. Co., 1946, 108 Utah 500, 160 A.L.R. 1259. Almost all jurisdictions agree, however, in construing the clause as extending coverage to some accidents in which the vehicle does not take an active part. Loading and unloading has generally been considered as dealing with the period in which the vehicle is not in motion, but in which articles are being put on or taken off.

■ Considering the factors which have been held relevant in other jurisdictions, and considering the principles which may be deduced from the Massachusetts interpretation of the operation and use clause, we think that the loading and unloading clause covers the accident here involved. The driver was about to remove the packages from the truck; certainly they had not come to rest in any way. The acts of the driver in driving up, opening the elevator doors and preparing to remove the packages were closely connected in time and uninterrupted. There was a causal relation between the unloading and the accident. The opening of the elevator doors was necessary in order to carry out the delivery and it was an integral part of the unloading process. We think that this is sufficient to establish the causal relation between unloading and the accident which appears necessary under the Massachusetts decisions. Cf. Maryland Casualty Co. v. United Corp., D.C.Mass. 1940, 35 F. Supp. 570. We do not think that under the principles applicable in Massachusetts there is any requirement that some article from the vehicle cause the accident in order for the policy to cover the accident. Cf. Maryland Casualty Co. v. Tighe, 9 Cir., 1940, 115 F.2d 297. If this be true under the use and occupation clause, we hold that the loading and unloading clause extends coverage at least to this extent. It is sufficient that there is a causal relation between the unloading and the accident.

The judgment of the district court is affirmed.