**TRAVELERS INSURANCE CO., Plaintiff, v. BUCKEYE UNION CASUALTY CO. et, Defendants.**

Common Pleas Court, Franklin County.

No. 198458. Decided March 10, 1959.

Wright, Harlor, Purpus, Morris & Arnold, for plaintiff.

Power, Griffith & Jones, for defendant The Buckeye Union Casualty Company.

Graham, Graham, Gottlief & Johnston, for defendant John Keiser.

## OPINION

By DRAPER, J.

This case comes into this court on a motion for judgment on the pleadings by the defendant Buckeye Union Casualty Company.

The points upon which the motion is based, are as follows:

1. Is the Declaratory Judgment action available to the Travelers Insurance Company in this case?

A—The motion for judgment on the pleadings is in the nature of a demurrer.

The question presented by such motion is whether or not the facts alleged are sufficient to give the Court jurisdiction to enter a Declaratory Judgment.

First—There must be a justiciable controversy.

Second—The facts pleaded must justify a declaration by the Court as to the rights of the parties which would terminate the uncertainty and end the controversy.

Third—Party seeking the relief must show he has a legal interest in the controversy.

If these are shown, then the Court may declare rights of parties.

2. Is there a duty to defend based on the allegations contained in the petition?

3. Can the employee of the insured recover under the policy?

Basically the issue is, does the Buckeye Union Casualty Company owe coverage to and the right to defend to the Gulf Refining Company, a defendant in a suit in Federal Court where John Keiser is plaintiff. The following are the facts:

The Gulf Refining Company maintains a place of business at 1400 Moxahala Avenue, Zanesville, Ohio, for the distribution of petroleum products; that on this premises is located a large overhead pipe through which diesel fuel is loaded into tank trucks.

The Travelers Insurance Company had in full force and effect a certain policy of liability insurance issued to Gulf Refining Company, providing bodily injury liability coverage on the premises here in question and containing, among others, the following provisions:

"The Travelers Insurance Company * * * agree with the insured, named in the declarations made a part hereof, * * * subject to the limits of liability, exclusions, conditions and other terms of this policy, provided The Travelers Insurance Company shall be the insurer with respect to Coverage A and no other * * *:

"Insuring Agreements

"1. Coverage A—Bodily Injury Liability.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

\* \* \* \* \* \*

"Conditions

"The conditions, except conditions 7, 9, 10 and 11, apply to all coverages. * * *

"\* \* \*

"3. Definitions. * * *

"(b) Automobile. Except where stated to the contrary, the word 'automobile' means a land motor vehicle or trailer as follows:

"(1) Owned Automobile—an automobile owned by the named insured;

"(2) Hired Automobile—an automobile used under contract in behalf of, or loaned to, the named insured provided such automobile is not· owned by or registered in the name of (a) the named insured or (b) an executive officer thereof or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile;

"(3) Non-Owned Automobile—any other automobile.

"* * *

"(e) Purposes of Use. * * * Use of an automobile includes the loading and unloading thereof.

"* * *

"12. Other insurance. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to such automobile or otherwise. * * *"

The Buckeye Union Casualty Company issued to one R. T. McCracken an automobile liability insurance policy, which policy covered the truck herein and contained among others, the following provisions:

"Declarations

"* * *

"Item 5. The purposes for which the automobile is to be used are business, pleasure and commercial. * * * (c) Use of the automobile for the purposes stated includes the loading and unloading thereof.

"* * *

· "The Buckeye Union Casualty Company * * * agrees with the Insured, named in the Declarations made a part hereof, * * * subject to the limits of liability, exclusions, conditions and other terms of this policy:

"Insuring Agreements

"I. Coverage A—Bodily Injury Liability—To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

"* * *

"II. Defense, Settlement, Supplementary Payments. As respects the insurance afforded by the other terms of this policy under Coverages A and B the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or

fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * * (c) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon; * * *

"The amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy.

"III. Definition of 'Insured.' With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply: (a) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage. sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof, but this exclusion does not apply to a member of the same household as the named insured; (b) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."

"Exclusions," provides in part:

"This policy does not apply * * * (d) under coverages A and C, to bodily injury to, or sickness, disease or death of any employee of the insured while engaged in the employment, other than domestic, of the insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law; (e) under coverage A, to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law * * *."

On or about April 6, 1954, at or about 10:15 A. M. John Keiser, an employee of R. T. McCracken, drove the truck herein which was a tank truck, to the premises of the Gulf Refining Company for the purpose of obtaining a load of diesel fuel. When he arrived at the premises of Gulf Refining Company, he placed his truck by the loading platform, climbed on the side, opened the cocks and prepared to load. The Gulf Refining employees handed down to John Keiser a loading pipe from which the diesel fuel had not been drained on a previous loading. As the pipe was lowered to John Keiser, there suddenly spued forth oil into the face of John Keiser, causing him to lose his balance, and to fall from the top of the truck, striking his face on the truck door and landing on his back on the ground.

John Keiser, sued the Gulf Refining Company in the Federal Court at Columbus, Ohio, alleging the facts herein and others.

The Travelers Insurance Company requested Buckeye Union Casualty Company to defend the action on behalf of Gulf Refining Company, which they refused to do; after this refusal Travelers instituted this action to declare that:

1. That the Gulf Refining Company is an insured under the policy of Buckeye Casualty Company and is entitled to coverage thereunder.

2. That the coverage afforded to Gulf under the plaintiff's policy is excessive over such coverage under the policy of defendant, Buckeye.

3. That Buckeye is required to undertake the defense of Case No. 4619 on behalf of Gulf and to assume up to limits of its policy, the responsibility for any judgment or settlement.

The first question to be decided is whether the declaratory judgment action filed herein can be maintained by the Travelers Insurance Company.

The statutes under which this action is attempted to be maintained are §§2721.01, 2721.02, 2721.03, 2721.04, 2721.05 and 2721.06 R. C.

"As used in §§2721.01 to 2721.15, inclusive, R. C., 'person' means any person, partnership, joint-stock company, unincorporated association, society, municipal corporation, or other corporation."—Sec. 2721.01 R. C.

"Courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding is open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect. Such declaration has the effect of a final judgment or decree."—Sec. 2721.02 R. C.

"Any person interested under a deed, will, written contract, or writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under such instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."—Sec. 2721.03 R. C.

"A contract may be construed by a declaratory judgment either before or after there has been a breach thereof."—Sec. 2721.04 R. C.

"Any person interested as or through an executor, administrator, trustee, guardian, or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust, in the administration of a trust, or of the estate of a decedent, an infant, lunatic, or insolvent, may have a declaration of rights or legal relations in respect thereto in any of the following cases:

"(A) To ascertain any class of creditor, devisees, legatees, heirs, next of kin, or others;

"(B) To direct the executors, administrators, trustees, or other fiduciaries to do or abstain from doing any particular act in their fiduciary capacity;

"(C) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."—Sec. 2721.05 R. C.

The purpose of these statutes is very ably set forth in Sec. 4 of 16 O. Jur. 2nd, p. 643 entitled "Declaratory Judgments," as follows:

"**Purpose of Statutes.** The Declaratory Judgments Act was primarily designed to supply deficiencies in legal procedure which existed prior to its enactment, and its principal object and purpose was to provide a remedy in those situations where none existed because a controversy had not progressed to a point where there was a wrong to remedy or a right to enforce. Its purpose is to provide procedural means to settle controversies and to afford relief from uncertainty with respect to rights, status, and other legal relations. In other words, the basic purpose of the act is to relieve parties from acting at their peril in order to establish their legal rights.

"Certain sections of the act enumerate certain specific purposes for which the remedy provided by it may be employed, but the act states that such enumeration does not limit or restrict the exercise of the general power conferred by it."

At Section 5, ibid, it is held that the act provides that its sections are remedial and shall be liberally construed.

There must be a justiciable dispute between the parties, and they may not litigate questions which may never affect them to their disadvantage.

The controversy required to support an action for a declaratory judgment must be a controversy based upon legal rights and obligations. It must be shown that plaintiff has a legal interest in the alleged controversy. There is a controversy between the parties where there is a dispute as to their rights.

16 O. Jur. 2nd—Declaratory Judgment, Sec. 8, p. 638, holds:

"**Necessity of Cause of Action Apart From That Created by Declaratory Judgment Statute.**

"Jurisdiction of an action for declaratory judgment is not confined to cases in which the parties or one of them has a cause of action apart from that conferred by the act itself. The Declaratory Judgments Act contains a provision expressly authorizing the rendition of judgments whether or not further relief is or could be claimed. To hold that there must be a 'cause of action,' as that term is ordinarily used, would defeat the fundamental purpose and destroy the real value of the remedy."

At Section 9 it is held:

"The granting of a declaratory judgment is within the sound discretion of the court, and the jurisdiction to grant such judgment is not limited by the terms of the statutes to those cases in which no other remedy is available either at law or in equity. On the contrary, the Code authorizes courts of record to declare rights, status, and other legal relations whether or not further relief is or could be claimed. * * *"

Sec. 34 Ibid—All persons shall be made parties who have or claim to have any interest that would be affected by the declaration and no declaration shall prejudice the rights of persons not parties to the proceedings.

The Buckeye Union Casualty Company has attacked the right of the Travelers Insurance Company to maintain this declaratory judgment action on the grounds that The Travelers is not a person who has a protectable interest or legal interest in the relief sought.

The contention continues that there is no right flowing from Buckeye to the Travelers; that since Gulf is not a party or claiming any interest, then Travelers has no standing in this court.

As set forth in **Driskell v. City of Cincinnati, 66 Oh St 372, Syl. 1** and **2:**

"1. A petition for a declaratory judgment is not sufficient against demurrer if there is not alleged facts which would give rise to a right-duty relation between the parties; which relationship is in dispute and which places the plaintiff in a position of peril or insecurity.

"2. A declaratory judgment can be rendered only in cases where there is a real controversy between adverse parties in a matter which presents a justiciable dispute."

There is no question that the insurer and his insured would have a right to maintain this action. **The Travelers Indemnity Company v. Cochran, Jr., 155 Oh St 305.**

There would also be little doubt in the Court's mind that Gulf Refining Company would have a right to maintain such action to determine which of said companies should defend and pay any judgment rendered. In this case Gulf Refining Company has no need to file such an action as Travelers has so far accepted the defense.

In the case of Continental Casualty Co. v. Buckeye Union Cas Co., 143 N. E. 2d 169, Common Pleas Court, Franklin County, Ohio, in a case involving a similar question to the one at bar, all of the parties were before the Court and no question was raised as to the Court's jurisdiction to hear the case.

In the case of Pleasant Valley Lima Bean Growers and Warehouse Assn. v. Col.-Farm Insurance Company, 298 Pac. 2d, 109, a case on all fours with the present case, we are unable to determine if there are any other parties than the insurance companies except defendant's cross-complaint asks a determination of rights of all parties concerned. There the Court determined rights under declaratory judgment act.

In the case of **Travelers Indemnity Co. v. State Automobile Ins. Co., 67 Oh Ap 457,** a case of declaratory judgment relating to coverage between two companies, all the parties were before the Court.

We come to the conclusion that the Court has jurisdiction to entertain a declaratory judgment action involving the question of coverage and right to defend between two or more insurance companies when all parties are before the Court. We must also conclude that an insured or insurer may ask for a declaration of rights. We also conclude that in this case, the Gulf Refining Company could have maintained this action or if a party hereto, the Court would have jurisdiction to entertain this case.

The question then presented is without Gulf Refining Company as a party, can The Travelers Insurance Company maintain this suit? This question is not intended to determine all the points of this case as we still have other questions which we must determine if we have jurisdiction. These questions would also go to right to grant relief. They are the question of loading and unloading, Employer-Employee, etc. In determining the question of the right of the party to maintain the action, we are not disposing of those questions.

Does the Travelers have a legal interest in the relief sought?

Is there a right flowing from the Buckeye Union Casualty Company to the Travelers?

Borchard explains "Legal Interest" in Borchard's Declaratory Judgments (2nd Ed.) page 49:

"* * * In the more familiar executory action, the legal interest is sought in the 'cause of action,' but, as already observed, the narrow scope often given to this ambiguous term has served to conceal from view the many occasions and situations in which a plaintiff not yet physically injured or one seeking escape from dilemma and uncertainty by a clarification of his legal position has need for judicial relief not of the traditional kind. The wider opportunity and necessity for judicial usefulness disclosed by the declaratory judgment make necessary either a more flexible and comprehensive connotation of the term 'cause of action' or the employment of a less chameleonic term to indicate when the petitioner may be accorded judicial protection. Without losing sight of the necessity for jurisdictional facts, it is suggested that the term 'legal interest' meets the need."

What would be Travelers legal interest in and to the Buckeye Union Casualty Company's policy? Gulf would have a legal interest in Buckeye Union Casualty Company's policy if all the facts justified it (which will be determined later) under III of declaration which is as follows:

"III. Definition of 'Insured.' With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * *"
and Item 5:

"The purposes for which the automobile is to be used are business, pleasure and commercial. * * * (c) Use of the automobile for the purposes stated includes the loading and unloading thereof. * * *"

Thus, if Gulf cared to, they could maintain this action provided other facts would justify it. Travelers owes a duty to Gulf to defend in the type of actions set forth herein provided there is no other insurance available to Gulf. Gulf, with knowledge that Travelers has to defend, has no reason to involve itself in the expense of a law suit to require Buckeye to defend it. Thus, without the institution of a suit by Gulf, Travelers would be deprived of the right to determine and enforce the provision of its contract with reference to its contract being excess insurance over other available insurance. Thus they would be deprived of a legal right since they could not compel Gulf either to sue or become a party.

Since Buckeye has a coverage provision which, if all the facts warranted, would cover Gulf and cause the Travelers Insurance to become excess and since, if Buckeye policy under the fact would cover Gulf, Buckeye would then be the primary party to defend and pay to the limit of its policy any judgment or settlement, but could not be compelled to do so unless Travelers has a right to maintain this action.

To hold that Travelers had "no legal" interest or that there was no right flowing from Buckeye without a legal determination, is in contravention of equity as well as the reason and purpose of the Declaratory Judgment Act.

If Gulf does not desire to have the question of coverage determined, this cannot prevent Travelers from maintaining an action to determine coverage and defense; as they have a legally protective interest arising from the provisions of their policy which becomes excess to the Buckeye under certain facts which have to be determined in time to protect Gulf both as to defense and payment.

There is a right flowing to Travelers by way of Gulf from Buckeye where, under their policy, they recognize a right of coverage for Gulf under certain factual patterns, which would eliminate Travelers as having primary liability.

Further there is a controversy, as has been pointed out, which can be resolved by this action.

So far as the motion is concerned, Travelers has such a legal interest as to maintain this action.

The questions of Loading and Unloading and Employer-Employee relationship as to preventing this action will be discussed in order.

The second point presented is whether there is a duty to defend, based upon the allegations contained in the petition. The allegation is as follows:

"* * * the defendant through its employee who was then in the course of his employment with the defendant, handed down to this plaintiff the loading pipe from which diesel fuel had not been previously emptied and as a result thereof diesel fuel poured out of said pipe into the face of this plaintiff causing him to lose his balance and to fall from the top of the truck, striking his face on the truck door and then landing on his back on the ground."

The question raised is whether this is loading and unloading the truck as specified in the Buckeye Union policy.

The answer to this question relates to the question of whether or not the Buckeye Policy becomes primary so as to make the Travelers' policy excess.

If the accident did not occur as a result of the loading and unloading of the truck, then the duty to defend and coverage is owed by Travelers and not by Buckeye. If, on the other hand, the accident occurred while loading and unloading the truck, then Buckeye would owe a primary obligation to defend and pay, provided there are no other exclusions in their policy that would exclude their liability.

The act in question, which is gleaned from the petition filed by John Keiser, is that the truck had come to rest preparatory to receiving a load of Diesel fuel. The driver had opened the cock and was waiting for the pipe to insert it into the tank, at which time the employees of Gulf would turn it on and the loading would commence; that on this day, as the loading pipe approached the tank on the truck, oil poured out into the face of plaintiff, causing the injuries as set forth.

In the allegations of negligence, plaintiff says that the oil was either

there from a previous loading or it was allowed to flow before pipe placed in tank.

Bobier, dba v. National Casualty Co., 143 Oh St 215, at page 221, holds:

"When then does the loading begin and the unloading cease? We think that the loading begins when the employees of the plaintiff connected with the truck receive the article and as part of a continuing operation place it upon the truck; and that the unloading ceases when the article is taken from the truck by such employees and as part of a continuing operation is delivered to the customer or to the place designated for delivery." (Emphasis ours.)

Was the act complained of 'loading' as contemplated by the policy of the Buckeye Union Casualty Company.

Wagman v. American Fidelity and Casualty Co., 109 N. E. 2d, 592—a New York case at page 594, holds:

"The interpretation of clauses such as those in Gilbert's policy, defining 'use' of the insured automobile as including 'loading and unloading,' has occasioned doctrinal division among the authorities. The narrower construction, adopted in some states, insists upon a close connection between the vehicle and the acts for which coverage is claimed. 'Loading' is interpreted by the courts of those jurisdictions as including only the immediate act of placing the goods upon the vehicle,—excluding the preliminary acts of bringing the goods to the vehicle; and "unloading" is taken to embrace only the operation of removing the goods from the vehicle to a place of rest. See, e. g., St. Paul Mercury Ind. Co. v. Standard Accident Ins. Co., 216 Minn. 103, 11 N. W. 2nd 794; Stammer v. Kitzmiller, 226 Wis. 348, 276 N. W. 629. The broader construction, adopted in a majority of the jurisdictions which have passed upon the question, is that 'loading and unloading' embrace, not only the immediate transference of the goods to or from the vehicle, but the 'complete operation' of transporting the goods between the vehicle and the place from or to which they are being delivered. See e. g., State, ex rel. Butte Brewing Co. v. District Ct., 110 Mont. 250, 100 P. 2d 932; Bobier v. National Cas. Co., 143 Oh St 215, 54 N. E. 2nd 798; Conrad v. Duffin, 158 Pa. Super. 305, 44 A. 2d 423, 160 A. L. R. 1251; London Guar. & Accident Co. v. C. B. White & Bros., 188 Va. 195, 49 S. E. 2d 254. The latter view impresses us as sounder, as more fully carrying out the aim of the policy—to cover the entire operation of making commercial pickups and deliveries in the business of the insured carrier—and, indeed, the courts in this state have already signified their approval of it."

Lowry v. R. H. Macy & Co., 119 N. Y. S. 2d. 5, at pages 9 and 10 holds:

"Two schools of legal thought in the various jurisdictions have developed as to the proper construction to be given the clause 'loading and unloading.' One is that the coverage extends only to the point where the merchandise is physically removed from the truck and first 'comes to rest.' The other is that the coverage persists beyond that point and until the merchandise actually is delivered to the consignee and arrives at the ultimate point of delivery designated by such consignee, even though such point be somewhere on the latter's premises.

The latter viewpoint is referred to as the 'complete operation' doctrine. (Emphasis ours.)

George Spurlock v. Boyce Harvey Machinery Inc., 90 So. 2d, p. 417, holds at page 422:

* * * "Practically all authorities are agreed that in such insurance contracts the phrase 'including loading and unloading' is a phrase of extension. It expands the expression 'the use of the truck' somewhat beyond its connotation otherwise so as to bring within the policy some acts in which the truck does not itself play any part. It deals with a period when the truck itself is at rest, but the goods are being moved onto or off the truck." Pacific Automobile Ins. Co. v. Commercial Casualty Insurance Co., 180 Utah 500, 161 P. 2d 423, 424, 160 A. L. R. 1251, at page 1253.

"* * *

"* * * 4. There is a conflict of authority in regard to the scope of loading and unloading operations, the courts adhering either to the 'coming to rest' doctrine or to the 'complete operation' doctrine."

"* * *

" 'Coming to rest' doctrine

"The theory under which the scope of an automobile liability insurance policy is least broadened by the addition of the 'loading and unloading' clause is the so-called 'coming to rest' doctrine. According to this doctrine unloading within the meaning of the 'unloading' clause comprises only the actual removing or lifting of the article from the motor vehicle up to the moment where (a) the goods which were taken off the automobile have actually come to rest and (b) every connection of the motor vehicle with the process of unloading has ceased. * * *

"The rule probably can be stated that under this view, the term 'loading' covers the period of time and events beginning when the articles are started in movement which movement is not interrupted or broken by rest or pauses, until the articles are placed in or on the motor vehicle.

"It should be noted that even under this theory loading and unloading are held to include more than the mere acts of placing the goods on the automobile or of removing them therefrom. No case has been found that would give the clause such narrow construction." * * *

" 'Complete operation' doctrine.

"Giving the 'loading and unloading' clause a somewhat broader construction than it has under the 'coming to rest' doctrine, some courts take the view that such clause covered the entire process involved in the movement of goods from the moment when they are given into insured's possession until they are turned over at the place of destination to the party to whom delivery is to be made. This theory, which may appropriately be called the 'complete operation' doctrine, omits, for all practical purposes, any distinction between 'unloading' and 'preparatory actions.' "

"* * *

"However, we believe it can safely be said that a majority of the more recent cases follow the more liberal doctrine that the 'loading and unloading' clause is to be interpreted to cover all the steps that can be

regarded as an **integral, continuous part** of the complete operation of transferring the goods into or out of the insured motor vehicle. Of course, all cases agree that where the loading and unloading begins or ends must by necessity vary greatly with the facts of each case."

"* * *

"Cases cited by appellant-Travelers in support of its contention that under the 'complete operation' doctrine the liability to plaintiff Spurlock was covered by the 'loading and unloading' clause of the American Mutual Automobile Liability policy include:  Pacific Automobile Ins. Co. v. Commercial Casualty Ins. Co., 108 Utah 500, 161 P. 2d 423, 160 A. L. R. 1251; Wagman v. American Fidelity & Casualty Co., Inc., 304 N. Y. 490, 109 N. E. 2d 592; Raffel v. Travelers Indemnity Co., 141 Conn. 389, 106 A. 2d 716; Connecticut Indemnity Company v. Lee, 1 Cir., 168 F. 2d 420; Lowry v. R. H. Macy & Co., Sup., 119 N. Y. S. 2d 5."

"* * *

"In the very recent case of Bituminous Casualty Corporation v. Travelers Insurance Company, D. C., 122 F. Supp., 197, the personal injuries of the truck driver, who was the named insured, were held covered under the 'loading and unloading' clause of his own policy.  They were caused by the negligence of the consignor's power-shovel operator, who struck the truck's **owner-driver with his power-shovel which was about to load some lime into the truck** for consignment; the consignor's employee (the power-shovel operator) was held to be an omnibus assured under the policy, as engaged in loading the insured truck."

"However, we believe it can safely be said that a majority of the jurisdictions, and a majority of the more recent cases, follow the more liberal doctrine that the 'loading and unloading' clause is to be interpreted to cover all the steps that can be regarded as an integral, continuous part of the complete operation of transferring the goods into or out of the insured motor vehicle.  Of course, all cases agree that where the loading and unloading begins or ends must by necessity vary greatly with the facts of each case."

"* * *

"Whether the actions preparatory to loading the goods are so directly related to use of the truck in question as to be within the coverage of the 'loading and unloading' clause is a matter which must vary greatly with the facts of each case—but here, with the truck present at the premises and some of the goods already loaded and in the midst of loading the remainder, and when the injury was sustained as a direct result of an activity directly related to such loading, we think coverage must unquestionably be sustained."  (Emphasis ours.)

We are left with a determination of whether the act of moving the pipe toward the truck might be considered as a part of the loading as set out in the Buckeye policy.

The answer to this question depends upon the facts in this case, see 90 So. 2d, 417, above.

**Socony Vacuum Oil Co. v. Continental Casualty Co.,** 144 Oh St 382, Syl. 1, is as follows:

"The duty of a liability insurance company under its policy to defend

an action against its insured is determined from the plaintiff's petition, and when that pleading brings the action within the coverage of the policy of insurance, the insurer is required to make defense regardless of its ultimate liability to the insured."

**Bloom-Rosenblum-Kline Co. v. Union Indemnity Co., 121 Oh St 220, Syl. 1:**

"Under an automobile insurance policy wherein the company insured against loss from liability imposed by law upon the assured for damages accidentally suffered or alleged to have been accidentally suffered by any person or persons, caused by the automobile vehicles described or referred to in said policy, and agreed, if suit be brought to enforce such claim for damages, to 'defend such suit whether groundless or not' and bear the expense incurred by it in defending such suit. the company is required to defend a suit wherein the cause of action is based upon a claim for damages covered by the policy, and if the company failed to comply with that provision of the policy it is liable to the assured for the cost and expense of making its defense in such case, notwithstanding the suit was groundless and was defeated."

The facts set forth in the Amended Complaint would then determine whether or not Buckeye Union would be required to defend as against Travelers. Was the negligence, if any, caused by Gulf's employees while loading the truck as defined in the cases cited herein?

Buckeye's policy agrees to insure a non-owner while **using or responsible for the use** of the truck and use is to be considered "Loading and Unloading."

Many fact situations present themselves for discussion as to when loading and unloading occurs to bring the accident within the terms of the policy.

If the hose or pipe was inserted in the tank and an accident occurred, there would be no question but that the accident occurred while loading.

If John Keiser had touched the pipe and was guiding it to insert into the tank, this also would be sufficient to establish loading.

In the case at bar, Keiser was still using or responsible for the use of the truck. He had performed no act at the time of the accident which would tie in the movement of the pipe to the act of loading or the use of the truck. Gulf was not using or responsible for the use of the truck at the time of accident as it had not yet made connection and started the movement of the product.

There is a distinction between the cases involving loading of goods and loading of oil. In the loading of goods the loading commences when the goods are put on a push car to be conveyed to the truck or when they come to rest at the delivery point. This is the broad concept of loading and unloading as set forth in the cases herein with which we agree.

Loading commences when goods have started to move from the place of rest to the vehicle and unloading ceases when the goods have moved from the vehicle to the place of rest. The essential term is **movement**; whether by dolly, two-hand truck, or pipe, or other means;

and distance or time are not the essential factors. So long as movement once started is uninterrupted, the goods are in the process of loading or unloading.

The truck covered by the Buckeye Policy was not yet within the contemplated use of Gulf nor was Gulf responsible for its use as no goods had started moving toward the tank in the process of loading.

The availability of the truck for loading in and of itself would not bring it within the provision relating to loading or unloading! There must be some act which would indicate that the process had started to completion.

Two cases have been brought to the Court's attention with reference to loading and unloading in both cases the process of loading had started before the accident.

The first case is Bituminous Cas. Corp. v. Travelers Ins. Co., 122 Fed. Supp. 197. In this case, the facts are at p. 199:

"An employee of the Rochester Quarry Company, one Ed Wegman, operated the power shovel. When the truck was about one-fourth full of lime, and as the shovel was about to deposit more lime into the truck, something happened to the power shovel; according to Wegman, a gear slipped or jumped. In any event, Wegman could not control the arm which held the shovel and the arm kept swinging. As he tried to lower the shovel to the ground, he was not able to avoid contact with the truck and the shovel hit Williams, thereby injuring him."

We thus see here that movement had commenced and loading is thus considered as continuing until the truck is loaded.

The other case is the case cited herein, being Spurlock v. Boyce-Harvey Machinery, 90 So. 2d 417, which is determined on theory of "Complete operation doctrine," the essential point of the case is cited at p. 426 of the case and page 17 of this decision, again we see that movement had commenced as a bundle had already been placed on the truck.

In all cases cited to show the extent of loading and unloading, we find that **movement** had started or goods were actually placed in the truck.

Under this provision there had not come into being yet, the operation of the Insurance Contract of Buckeye as to coverage and with no coverage there could be no right to defend.

The final proposition to be determined involves the exception in the Buckeye Policy with reference to exclusions of employees. Said policy provides, under the heading "Exclusions":

"This policy does not apply * * * (d) under coverages A and C, to bodily injury to, or sickness, disease or death of any employee of the insured while engaged in the employment, other than domestic, of the insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law; (e) under coverage A, to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law * * *."

Does the fact that John Keiser was an employee of R. T. McCracken

exclude him from coverage under the Buckeye Policy provided the Buckeye policy would be the primary policy under the facts herein?

Pleasant Valley Lima Bean Growers & Warehouse Assn. v. Cal-Farm Insurance Company 298 P. 2d 109, holds at p. 112:

"(1) Cal-Farm maintains that coverage does not extend to plaintiff and Croker under the omnibus clause, but before considering the interpretation of that clause which is advocated, we shall discuss the separate contention that any liability of Brucker or Pleasant Valley for bodily injury to Nungaray, Brucker's employe, is expressely excluded from coverage under its policy by the above quoted exclusion clause. It is Cal-Farm's position that the clause "bodily injury to, sickness, disease or death of an employee of the insured" must be read "bodily injury to, sickness, disease or death of any employee of only the named insured"; hence, since Nungaray was **Brucker's employe acting within the scope of his employment at the time** of the accident, insurance coverage under the "omnibus clause" would be excluded as to Pleasant Valley and Croker, notwithstanding the fact Nungaray was not an employe of Pleasant Valley or Croker. Croker and Pleasant Valley contend that the exclusion clause of the policy must not be read restrictively, that the term "insured" in that clause is not limited to the insured named in the policy but extends, due to the "omnibus clause," to the other persons who qualify as additional insured, and that the exclusion clause, properly interpreted, operates to exclude coverage only in cases where the injured party is the employe of the particular insured (whether named insured or additional insured) who is seeking protection under the policy. Thus, on this hypothesis, since Nungaray was not employed by either Pleasant Valley or Croker, Cal-Farm's obligations under its policy are not extinguished by reason of the fact that Nungaray was an employe of Brucker, the named insured. We agree with the latter interpretation." (Emphasis ours.)

Also at page 114:

"(7) The exclusion clause must be read as a whole and we think leads inescapably to the conclusion that it means only that the coverage, whether of the named or the additional insured, does not apply to anyone who has liability under workmen's compensation laws. As Pleasant Valley and Croker are additional insureds under defendant's policy, and as there is nothing in the record to show that either Croker or Pleasant Valley is obligated to Nungaray under workmen's compensation law, with respect to the accident, it is clear that Pleasant Valley and Croker are not excluded from policy protection as to an action brought by Nungaray against them for personal injuries."

In the case at bar, Gulf would have the benefit of the Buckeye policy provided it came within the exceptions stated. When these exceptions operated, John Keiser did not become an employee of Gulf by the process of osmosis; thus the exclusion clause would not operate as to Gulf. To accept Buckeye's theory we would be faced with the anomaly that they had to defend Gulf under their exclusion, but could excuse it by stating that John Keiser was an employee of McCracken. This would present an impossible situation that could never be resolved.

Buckeye's policy refers not to an employee of "the named insured" (McCracken), but simply to an employe of "the insured"; thus it removes coverage only when the injured person is an employee of the particular insured he is suing.

As stated in the Pleasant Valley case, supra, John Keiser at the time of the injury was not an employee of Gulf against whom he had a cause of action and to whom Buckeye would extend coverage under certain conditions; which, if met, would not allow Buckeye to use their employee exclusion clause, as at the time of the accident John Keiser would not come under this exception.

The motion of defendants Buckeye, which has been considered as a demurrer, will be sustained.