274 N.E.2d 419 (1971)
INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY, Appellant,
v.
STATESMAN INSURANCE COMPANY, Appellee.
No. 1169A223.
Appellate Court of Indiana, In Bank, Division No. 2.
October 27, 1971.
*420 Samuel E. Fuller, Indianapolis, for appellant; Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, of counsel.
Arthur J. Sullivan, David F. McNamar, Indianapolis, C. Thomas Cone, Greenfield, for appellee; Steers, Klee, Jay & Sullivan, *421 Indianapolis, Williams & Cone, Greenfield, of counsel.
WHITE, Judge.

I.

STATEMENT OF THE CASE.
Jack B. Walker was an employee of Imperial Water Conditioning Company (hereafter "Imperial"). In the course of his employment he drove a truck, leased by his employer from a truck rental firm, to the home of Mr. and Mrs. Soots (hereafter "Homeowners"), where he was in the process of delivering a water softener tank when he fell and injured himself. He was at the time carrying the tank onto the approach to the steps leading to the basement at the rear of the dwelling house. He was paid workmen's compensation benefits by his employer's workmen's compensation insurance carrier and it is undisputed that his injury arose out of and in the course of his employment. He also brought suit against Homeowners alleging, inter alia, that he was employed by Imperial to deliver a soft water tank to Homeowners' residence at Homeowners' request, and that he "proceeded to deliver said tank at the rear of * * * said home and when he stepped upon the approach to the outside basement stairs, it suddenly gave way, causing * * * [him] to fall, injuring him." Further, that the injuries were proximately caused by Homeowners' negligence in (a) failing to "secure the supports under the approach"; (b) maintaining an inadequately supported approach; (c) failure to inspect the approach; and failure to warn him "that said approach was not adequately supported and that the supports were loose and about to give way."
Howeowners notified their own residence liability insurance carrier, Indiana Lumbermens Mutual Insurance Company (hereafter "Lumbermens"), which employed attorneys to represent Homeowners. In a compromise settlement the injured truck driver was paid a sum of money by Lumbermens and he and his employer's workmen's compensation insurance carrier released Homeowners. In the meantime Lumbermens had discovered that Imperial carried an automobile liability policy with Statesman Insurance Company (hereafter "Statesman") covering use of the delivery truck in which the injured driver brought the tank to Homeowners' dwelling house.
Lumbermens, through the attorneys it employed to defend Homeowners, made a demand on Statesman to assume defense of the truck driver's suit against Homeowners on the theory that the "loading and unloading clause" of the truck liability policy afforded coverage to Homeowners.[1] Statesman did not accede to that demand and Lumbermens brought this action against Statesman to recover the sums which Lumbermens had expended in defense and settlement of the truck driver's lawsuit.
Lumbermens' theory of liability, simply stated, is that Homeowners (Mr. and Mrs. Soots) were "using" the truck at the time of the truck driver's injury in that they were "cooperating" in its unloading. Their "cooperation" consisted in furnishing their premises for the unloading process. That "using" (so goes Lumbermens' theory) made them additional insureds by *422 virtue of the omnibus clause of Statesman's policy.[2]
When the case was at issue on plaintiff's amended complaint, defendant's amended answer in three paragraphs and plaintiff's reply, defendant moved for summary judgment on the ground that the pleadings and admissions disclose that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law. The court sustained that motion and entered judgment for defendant.
The trial court not only found that there was no genuine issue of material fact and that defendant Statesman was entitled to judgment as a matter of law but, in an apparent attempt to comply with the requirement that he "state with particularity his reasons for granting a summary judgment,"[3] made special findings of fact and conclusions of law in an entry which follows the form ordinarily used in "actions tried upon the facts without a jury."[4] That form is appropriate only when there has actually been a trial of questions of fact. The recital that "the Court * * * finds the following facts" carries with it what has been called "an unwarranted implication that a fact question was presented."[5] Those so-called findings of fact which merely recite the uncontroverted facts alleged in the pleadings or admitted in the "admissions" appear to be proper and, together with the conclusions of law which follow, serve to explain the court's action. Those "findings" which are conclusions, inferences, or ultimate facts drawn from the allegations of the pleadings and the admissions do not become facts by reason of having been so "found" by the court (as would be the case had they been inferred from evidence at a trial), but they may be clues to the reasoning which disposed the court to grant summary judgment.[6]
The court's findings and conclusions thus understood disclose three reasons for his conclusion that defendant Statesman was entitled to judgment as a matter of law. Those reasons, not in the order stated *423 in the entry nor in the words of the entry,[7] are:
1. At the time of the accident, the truck was not being used in any manner.
2. The accident arose out of Homeowners' negligence in the maintenance of their premises and not out of any use of the truck.
3. The Statesman policy excludes the truck driver's claim against Homeowners because the truck driver is an employee of Imperial (the named insured).

II.

USE OF THE TRUCK.
If the trial court is correct in concluding that the truck insured by Statesman was "not being used in any manner" at the time of the injury, then obviously Homeowners could not have been using it and could, therefore, claim no coverage under the omnibus clause as persons using the vehicle with the permission of the named insured.[8]

a. Use by the truck driver.
Lumbermens contends that the truck was being used in that it was being unloaded[9]; that under the "complete operation" doctrine the unloading of the truck would not have been completed until the tank was installed in Homeowners' basement. While there is a dearth of factual support for it in the record, the parties seem to be in agreement in their briefs, that at the time he fell, the truck driver was carrying a water softener tank from the Imperial truck to Homeowners' basement where he was to install it. For the purpose of this opinion we will assume those facts to have been tacitly stipulated. And on those facts, under the "complete operation" rule as we understand it, the truck was still being unloaded, and thus was still in use at the time of the accident. Therefore, we assume that the trial court rejected the "complete operation" rule.
No reported case in Indiana has involved the question of whether we should adopt the "coming to rest" rule, the "continuous passage" rule, or the "complete operation" rule.[10] Statesman has expressed no disagreement with Lumbermens' assertion that the complete operation doctrine is the rule of a majority of the states which have considered the question. New York's court of last resort, the Court of Appeals, adopted the doctrine in 1952. Judge Fuld, in Wagman v. American Fidelity & Casualty Co., Inc. (1952), 304 N.Y. 490, 494, 109 N.E.2d 592, 594, said:
"The interpretation of clauses such as those in Gilbert's policy, defining `use' of the insured automobile as including `loading and unloading', has occasioned doctrinal division among the authorities. The narrower construction, adopted in some states, insists upon a close connection between the vehicle and the acts for which coverage is claimed. `Loading' is interpreted by the courts of those jurisdictions as including only the immediate act of placing the goods upon the vehicle,  excluding the preliminary acts of bringing the goods to the vehicle; and `unloading' is taken to embrace only the operation of removing the goods from the vehicle to a place of rest. See, e.g., St. Paul Mercury Ind. Co. v. Standard Accident Ins. Co., 216 Minn. 103, 11 N.W.2d 794; Stammer v. Kitzmiller, 226 Wis. 348, 276 N.W. 629. The broader construction, adopted in a majority of the jurisdictions which have passed upon *424 the question, is that `loading and unloading' embrace, not only the immediate transference of the goods to or from the vehicle, but the `complete operation' of transporting the goods between the vehicle and the place from or to which they are being delivered. See, e.g., State ex rel. Butte Brewing Co. v. District Ct., 110 Mont. 250, 100 P.2d 932; Bobier v. National Cas. Co., 143 Ohio St. 215, 54 N.E.2d 798; Conrad v. Duffin, 158 Pa. Super. 305, 44 A.2d 770; Pacific Automobile Ins. Co. v. Commercial Cas. Ins. Co., 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251; London Guar. & Accident Co. v. C.B. White & Bros., 188 Va. 195, 49 S.E.2d 254. The latter view impresses us as sounder, as more fully carrying out the aim of the policy  to cover the entire operation of making commercial pickups and deliveries in the business of the insured carrier  and, indeed, the courts in this state have already signified their approval of it. * * * [citing opinions of lower New York courts.]
"Since, then, the policy is to be interpreted as covering the complete operation of making a pickup, the process  performed by Gilbert's employees  of placing the goods on the vehicle cannot be dissociated from the process  performed by Bond's employees  of taking the goods from the store to the curb line. Both operations together constituted the act of `loading' the vehicle."
Later, August A. Busch & Co. of Massachusetts v. Liberty Mutual Insurance Company (1958), 339 Mass. 239, 242, 158 N.E.2d 351, 353, added these reasons for the broadened interpretation of the loading-unloading clause, i.e., the "complete operation" rule:
"It is plain that the insertion of the loading and unloading clause in the Liberty policy was intended not to restrict the coverage otherwise afforded as to use of the motor vehicle but to extend the meaning of `use.' Pacific Auto Ins. Co. v. Commercial Cas. Ins. Co., 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251; Ferry v. Protective Indem. Co., 155 Pa.Super. 266, 38 A.2d 493. Compare LaMontagne v. Kenney, 288 Mass. 363, 367, 193 N.E. 9. Since the physical process of placing goods in or on a motor vehicle or in removing them from the vehicle plainly would be a use of the vehicle for those purposes, it is reasonable to conclude that the clause must have been intended to cover something more. We are concerned only with the connotation of the word `unloading.'
"When the policy was written in 1949 the meaning of that term when contained in motor vehicle liability policies was as above suggested, subject to varying judicial construction. The weight of authority seems to have supported the rule of `complete operation,' that is, the operation of not only removing goods from the motor vehicle but of their delivery to the purchaser or consignee rather than the more restricted doctrine that the unloading has ended when the goods have come to rest. In drafting its policy Liberty could not have been unaware of the current differences in opinion respecting the interpretation of the clause and therefore of its recognized latent ambiguity of meaning. In view of this ambiguity, doubts as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured. * * * [Massachusetts authorities omitted. See, however, Freeman v. Commonwealth Life Ins. Co. (Ind. App. 1971), 271 N.E.2d 177, 26 Ind.Dec. 231.]
"They must be construed in the sense that the insured was reasonably given to understand was intended to be their scope.
"What Busch would naturally understand was the extent of the coverage afforded by the policy may readily be inferred. It had hired the truck to use in its business which involved the transportation and delivery of its products to *425 customers. Its use of the truck was the means adopted to effect such delivery and the physical removal of goods from the truck was merely incidental to accomplishment of the final objective. From its point of view unloading would mean a continuous transaction ending with the deposit of the goods in the hands of the purchaser. That the insured would so interpret the meaning of unloading ought to have been expected by the writer of the policy. At least from past controversies between insurers and insured over the construction of the term it should have realized that the insured would be warranted in so construing it. We think the policy must be held to have insured Busch against liability to pay the damages resulting from the personal injury to Smith."
We, too, are impressed with the reasons stated by the New York and Massachusetts courts for adopting the "complete operation" doctrine. It seems the most reasonable rule for fulfilling the purposes for which operators of commercial pickup and delivery vehicles buy insurance. To require a delivering merchant to carry two policies to cover his potential liability for the acts and omissions of his truck driver-deliveryman while making pickups and/or deliveries away from the merchant's own premises borders on the ridiculous. We therefore hold that the facts of this case, as we have recited them, do not support the trial court's conclusion that the truck insured by Statesman "was not being used in any manner" (insofar as the coverage afforded by Statesman's policy is concerned). Consequently we cannot affirm the summary judgment on that reason.

b. Use by Homeowners.
Use of the truck by the truck driver, however, is not necessarily use by Homeowners. Had they actively assisted in the act of carrying the tank into the basement we would have no difficulty in conceiving of them as users of the truck. But no active participation by them appears in the record. It is alleged in the truck driver's complaint against Homeowners that they ordered the tank and thus invited him to use their property, including the allegedly defective stairway approach, for the purpose of making the delivery. But there is no allegation or admission any place in the record that Homeowners (or anyone else acting as their representative) ever did anything else to effect the delivery. On the other hand, there is no allegation which negates their active participation in the unloading process, so we cannot say that the trial court properly granted summary judgment on the ground that the record disclosed without dispute that they were not using the truck. Neither do we consider it advisable to decide at this time whether the mere request for, or consent to, the delivery of an article to one's premises makes one, as a matter of law, a participant in the unloading of the vehicle which brings it.[11] When the facts of this *426 case are more fully developed below, that question may not be presented. Our attempt to answer it in this present factual vacuum could lead to unanticipated and unintended implications.[12]

III.

CAUSALITY.
Three of the trial court's findings and one conclusion of law iterate (as a reason for granting summary judgment to Statesman) "[t]hat the efficient and predominating cause of the injury to Walker was the negligent act or omission of * * * [Homeowners] in the maintenance of their staircase." Whether that states a compelling reason for granting summary judgment to Statesman depends on whether the record negates the condition expressed in the words we have italicized in the following quoted insuring clause of Statesman's policy:
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * caused by accident and arising out of the ownership, maintenance or use of any automobile."
In other words, did the accident which injured the truck driver arise out of the use of the truck? Simply stated, Lumbermens' contention is that if the injury occurred in the unloading process (not merely during the unloading), it arises out of the unloading and thus arises out of the use of the truck. The cases seem to bear out that theory. Analogous fact situations abound.
*427 In Travelers Insurance Company v. Employers Liability Assurance Corporation, Ltd. (D.Md. 1965), 242 F. Supp. 627, "Hess", a petroleum distributor, operated a tank truck loading facility. "Yates" was a tank truck driver for "Stewart", a petroleum dealer who bought petroleum products from "Hess." "Yates" drove the tank truck to Hess's loading facility. Yates pulled a wire cord to open a valve so that oil would flow into his tank truck. The wire, being defective, broke and caused him to fall and injure himself. He sued Hess who claimed coverage under the loading and unloading clause of the truck insurance policy. In sustaining that claim the court said:
"Temporally, Yates' injury occurred during the loading of the truck. It occurred during the step in the loading process of releasing the valve which would have permitted the oil to flow into the truck. The act which resulted in the injury was necessary to carry out the loading and it made operative Hess' negligent maintenance of a defective wire cord. The conclusion that Employers policy affords protection to Hess follows.[13] See also, Columbia So. Chem. Corp. v. Manufacturers & Wholesalers Indem. Exch., 190 Cal. App.2d 194, 11 Cal. Rptr. 762 (1961); Pepsi-Cola Bottling Co. of Charleston v. Indemnity Ins. Co., 318 F.2d 714 (4 Cir.1963)." (Id. at 629).
In St. Paul Mercury Insurance Company v. Huitt (1964), 6 Cir., 336 F.2d 37, a truck was delivering ready-mixed concrete to a building site where it was being dumped from the mixer on the truck into a bucket on a crane and thus transferred to and poured onto the foundation. The crane's boom fell on a general contractor's employee and injured him. He sued Huitt, the sub-contractor-crane-owner whose employee was operating the crane. Huitt's general liability carrier, St. Paul, claimed coverage for Huitt under the loading and unloading clause of Auto Owner's policy on the concrete truck.
"It is the further contention of Auto Owners that before coverage would be extended there must appear a causal relationship between the accident and the use of the insured vehicle as a vehicle. The case of Pacific Auto Ins. Co. v. Commercial Casualty Ins. Co. (1945) 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251, is cited as so holding. It must be borne in mind that in construing the language of the policy we are not dealing with the problem of proximate cause of the accident. The question is not one in the field of torts of proximate cause of the accident, but one in the field of contracts of coverage under the wording of an insurance contract. While there must be a causal relationship between the insured use, that is unloading, and the accident, the question is not whether the insured truck was the cause of the accident. As stated in the case of Federal Ins. Co. v. Michigan Mutual Liability Co., 277 F.2d 442 (C.C.A. 3, 1960), where a somewhat similar contention was made by the automobile liability insurance carrier to the claim of coverage under the loading and unloading clause by a crane operator: `Appellant confuses the basis for finding liability for the purpose of recovery with the basis for finding the extent of coverage of the insurance contract.'" (Id. at 43).
The fact that the efficient and predominating cause of the truck driver's injury was Homeowners' negligence in the maintenance of their premises furnishes no basis for holding that his injury did not arise out of the use of the truck he was *428 unloading. Summary judgment for Statesman cannot be affirmed on that reason.

IV.

EMPLOYEE EXCLUSION.
The Statesman truck liability policy issued to Imperial contains the following exclusions:
"This policy does not apply: * * * (f) under coverages A[14] and B[15] to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law; (g) under coverage A, to bodily injury to or sickness, disease, or death of any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured; * * *."
With respect to those exclusions the trial court rendered the following conclusion of law:
"[T]he exclusionary provision of said insurance policy written by Statesman herein excluding employees of Imperial from coverage also applied to * * * [Homeowners] as well as Imperial and that * * * [Homeowners] as unnamed insureds (third party beneficiaries) are not entitled to additional or increased benefits or coverage over the named insured Imperial."
That conclusion finds much support in reported opinions from other jurisdictions.[16] based largely on the standard clause defining "insured" thus:
"The unqualified word `insured' includes the named insured and also includes * * * (2) under coverages A and C, any person while using an owned automobile or hired automobile * * *."
Typical reasoning is found in General Accident Fire and Life Assurance Corporation, Ltd. v. Brown (1962), 35 Ill. App.2d 43, 51, 181 N.E.2d 191, 195, as follows:
"The exclusionary clause does not attempt to say who is an `insured' within its scope. Elsewhere in the policy, however, the `unqualified word "insured"' is defined to include both the named insured and all those qualifying as additional insureds. There is nothing whatsoever in the policy to suggest that this definition is not intended to apply to the use of the word `insured' in the exclusionary clause. We think it clear that such definition was meant to apply. Had there been any intention to confine the term `insured' in the exclusionary clause to the `named insured,' the latter phrase certainly would have been used, just as it was used elsewhere in the policy, when intended."
At the same time, however, other cases were saying that the word "insured" is severable and were construing the employee exclusions strictly against the insurer. Those cases held that "employee of the insured" in the exclusionary clause means an employee of the insured against whom the claim is being asserted.[17] In *429 1955 the companies began to add to their policies a "severability clause" which, an insurance industry publication says, "was intended to make clear that `where the term "the insured" is used * * * it is to be applied as meaning the insured against whom claim is made or suit is brought.'"[18]
That severability clause, as it appears in the Statesman policy, reads:
"Severability of Interests: The term `the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability."
Those words did not initially impress the Supreme Court of Texas. In Transport Insurance Co. v. Standard Oil Co. (1960), 161 Tex. 93, 99, 337 S.W.2d 284, 289, it said:
"The addition of the `severability of interests' clause does not indicate that the drafters of the policy form by the addition of such clause intended that the word `insured' means only the person claiming coverage.
* * * * * *
"In the policy involved here there is no ambiguity in the exclusion clauses and no inconsistency is shown between the exclusionary clauses and the `severability of interests' clause in the policy. The clear and unambiguous terms of the policy leads us to hold that no employee of the named insured engaged in the named insured's business can recover on the named insured's policy against anyone included as an additional insured."
Ten years later, however, in Commercial Standard Insurance Company v. American General Insurance Company (1970), Tex., 455 S.W.2d 714, 719, Transport was overruled with the court acknowledging that it had "failed to give proper emphasis to the `severability of interests' clause." The rationale of that opinion (on the point in question) is found in the following excerpt wherein it quotes from:
"General Aviation Supply Co. v. Insurance Co. of North America, 181 F. Supp. 380 at 384 (E.D.Mo. 1960), affirmed 8 Cir., 283 F.2d 590:
`The logical theory for the employee exclusion is to prevent employees of the tort feasor from suing his (sic) employer for injuries received thru his employer's negligence. A reason for this is that employees are usually covered by workmen's compensation and can recover from the employer, with or without negligence. When negligence is committed by other than his employer, the logic for the exclusion disappears. If the insurer wishes to further exclude its liability, it could clearly so state in its contract and its failure to do so should be strictly construed. Especially is this true when a policy contains a severability clause, for there can be implied that the insurer is actually recognizing a separate obligation to others, distinct and apart from the obligation it owes to the named insured * * *.'"[19] (455 S.W.2d at 721.)
*430 We are persuaded by that reasoning, by the addition of the severability clause, and by the suggestion that in other situations not involving the loading and unloading clause, the most practical result is achieved by the interpretation quoted last above.[20] We therefore hold that the employee exclusion is applicable only when the person claiming coverage as an insured is the employer. Consequently, the employee exclusion provides no reason for sustaining Statesman's motion for summary judgment.

V.

DECISION.
The undisputed material facts (i.e., those facts as to which there was shown to be no genuine issue) before the trial court when the motions for summary judgment came on for ruling did not entitle either Statesman or Lumbermens to a judgment. It was therefore reversible error for the court to grant summary judgment to Statesman. Accordingly, the judgment is reversed and the cause remanded for further proceedings not inconsistent with the views expressed in this opinion.
Reversed and remanded with instructions.
HOFFMAN, C.J., and SHARP and STATON, JJ., concur.
NOTES
[1] The "loading and unloading clause" is a sentence in the "Definitions" portion of the policy which reads: "Use of an automobile includes the loading and unloading thereof." It has significance in a case of this kind when read in conjunction with the so-called "omnibus" clause which, in pertinent part, reads:

"III. Definition of Insured: The unqualified word `insured' includes the named insured and also includes * * * (2) under coverages A and C, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured."
[2] See n. 1.
[3] Quotation from Singh v. Interstate Finance of Indiana (1969), Ind. App., 246 N.E.2d 776, 779, 17 Ind.Dec. 323, on authority of Harris v. Young Women's Christian Association of Terre Haute (1968), 250 Ind. 491, 499, 237 N.E.2d 242, 246, 14 Ind.Dec. 420.
[4] Rule TR 52(A).
[5] General Teamsters, Chauffeurs & Helpers Union, Local No. 782 v. Blue Cab Company, Inc. (CA 7 1965), 353 F.2d 687, 689.
[6] The wording of Indiana's Trial Rule 52 (A) and the federal Rule 52(a) are so essentially identical that the following comment on the federal rule is equally applicable to the Indiana rule:

"Rule 52(a) has been amended to provide that findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b). Even before this amendment the courts had held that findings of fact were unnecessary on a motion for summary judgment, although such findings could be made either with or without request. Logically, findings of fact should not be made in disposing of motions for summary judgment. Findings are appropriate only in deciding issues of fact. In granting a motion for summary judgment, however, the court merely rules that there are no material issues of fact and decides questions of law. In denying such a motion, the court holds that there are material issues of fact to be tried, but does not decide them. But despite logic, there is no objection to a court making findings of fact if it wishes to do so, in granting a motion for summary judgment. Such findings may well be helpful to the appellate court in making clear the basis for the trial court's decisions. Findings gratuitously made, however, are not entitled to the respect which an appellate court is required to give findings made pursuant to Rule 52(a)." (footnotes omitted). 3 Barron and Holtzoff, Federal Practice and Procedure, § 1242, at 201 (1958).
[7] A verbatim quotation of the entry (which covers four pages of typed brief, single spaced) would contribute nothing to the reader's understanding of the trial court's reasons for granting summary judgment or to our statement of reasons for this reversal.
[8] The omnibus clause is quoted ante, p. 421, n. 1.
[9] See the loading and unloading clause quoted ante, p. 421, n. 1.
[10] See 8 Blashfield, Automobile Law and Practice, § 317.9, p. 32.
[11] We have been cited no case from any other jurisdiction which has expressly so held. In its brief Lumbermens says that Homeowners "were using the Imperial truck in just the same fashion as Hess, Inc. was using the Stewart Petroleum truck [Travelers Insurance Company v. The Employers Liability Assurance Corporation, Ltd. (1965), [D.C.] 242 F. Supp. 627], as Procter & Gamble was using the Kane Transport truck [Employers' Liability Assurance Corporation, Ltd. v. Indemnity Insurance Company of North America (1964), [D.C.] 228 F. Supp. 896], and as O'Donnell was using the McKesson & Robbins truck [Continental Casualty Company v. Duffey (1966), [26 A.D. 2d 630] 272 N.Y.S.2d 470], i.e., they were negligent in maintaining their premises and in failing to warn Walker, their negligence was made operative by Walker in the performance of an act necessary to complete the unloading of the Imperial truck. The conclusion necessarily follows that the * * * [Homeowners] were insured under * * * [Statesman's] policy."

In the first two cases Hess, Inc., and Procter and Gamble were loading their merchandise into the trucks with the assistance of the truck drivers who were injured. Their use of the truck was their loading of it  not their negligent maintenance of their premises. In the third case O'Donnell's bartender gave a key to the basement door to the truck driver who was thereafter injured while taking whiskey from the truck into O'Donnell's tavern through that door. Without intimating that we would have held the bartender's handing over of the door key to be an active participation in the unloading, we merely note that it is nearer to active participation than anything the record shows Homeowners or their agents did in the case at bar. In fact we expressly disapprove of the only reason stated by the New York Appellate Division for holding O'Donnell to be an insured, that "there was a direct causal connection between the accident and the unloading of the truck and, therefore, the consignee O'Donnell was an insured person under said policy and there was coverage in his behalf under the loading and unloading clause * * *." That causal connection extends coverage under the unloading clause to one who is an insured but it does not make an additional insured of one who otherwise remains a stranger to the use of the truck. That stranger must do something which can be said to be use of the truck, albeit merely some act of loading or unloading which may be far removed from any physical contact with the truck. Because so many of the cases have failed to articulate the necessity for a stranger to be a user in order to become an insured, it is easy for the unwary reader to forget that the omnibus clause requires use, or responsibility for use, to make one an additional insured. To find that a homeowner is unloading a truck merely because he has "ordered" or "bought" the merchandise which is being unloaded at his home, seems to come dangerously close to, if not actually arriving at, a holding that every customer is responsible for the use of the truck throughout the entire delivery process beginning with its loading at seller's warehouse. What are the ramifications of such a holding if the truck is uninsured and the homeowner has no available insurance of his own?
[12] Of a slightly analogous summary judgment appeal, the United States Supreme Court said:

"We consider it the part of good judicial administration to withhold decision of the ultimate questions involved in this case until this or another record shall present a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts. While we might be able, on the present record, to reach a conclusion that would decide the case, it might well be found later to be lacking in the thoroughness that should precede judgment of this importance and which it is the purpose of the judicial process to provide." Kennedy v. Silas Mason Co. (1948), 334 U.S. 249, 257, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347, 1351.
[13] We do not read that "conclusion" to be that Hess is an additional insured merely because the act which resulted in the injury was necessary to carry out the loading. Hess was an additional assured because he was loading the truck. As an insured he got coverage under the truck policy for his negligent maintenance of his premises because that negligence became operative by an act essential to the loading. See Note 7, ante, p. 423.
[14] Coverage A is the "Bodily Injury Liability  Automobile" coverage which is the coverage here involved.
[15] Coverage B is "Bodily Injury Liability  Except Automobile," a coverage not here involved.
[16] General Accident Fire and Life Assurance Corporation, Ltd. v. Brown (1962), 35 Ill. App.2d 43, 181 N.E.2d 191; Transport Insurance Co. v. Standard Oil Co. (1960), 161 Tex. 93, 337 S.W.2d 284.
[17] See, e.g., Kaifer v. Georgia Cas. Co. (9th Cir.1933), 67 F.2d 309; New v. General Cas. Co. (D.C.Tenn. 1955), 133 F. Supp. 955; Farm Bureau Mut. Auto Ins. Co. v. Smoot (D.C.W.Va. 1950), 95 F. Supp. 600; Pullen v. Employers' Liability Assurance Corp. (1956), 230 La. 867, 89 So.2d 373; Sandstrom v. Clausen's Estate (1951), 258 Wis. 534, 46 N.W.2d 831; Shanahan v. Midland Coach Lines (1954), 268 Wis. 233, 67 N.W.2d 297.
[18] Quoting a case note in 39 Texas L.Rev. 115, 118, which quotes Fidelity Casualty and Surety Bulletins, Sept. 1957 at B-3.
[19] The 1970 Texas opinion cites the following cases as reaching the same result (some before and some after the addition of the severability clause): Pepsi-Cola Bottling Co. of Charleston v. Indemnity Ins. Co. of North America (4th Cir.1963), 318 F.2d 714; Stewart v. Liberty Mutual Ins. Co. (5th Cir.1958), 256 F.2d 444; Leonard v. Union Carbide Corp. (S.D.Indiana 1960), 180 F. Supp. 549; Walker v. Fireman's Fund Ins. Co. (D.C.Montana 1967), 268 F. Supp. 899; General Aviation Supply Co. v. Insurance Co. of North America (E.D.Missouri 1960), 181 F. Supp. 380; Canadian Indemnity Co. v. State Auto Insurance Association (D.C.Oregon 1959), 174 F. Supp. 71; Travelers Ins. Co. v. American Fidelity & Casualty Co. (Minnesota, 3rd Div., 1958), 164 F. Supp. 393; Pleasant Valley Lima Bean Growers and Warehouse Ass'n v. Cal-Farm Ins. Co. (1956), 142 Cal. App.2d 126, 298 P.2d 109; Pullen v. Employers' Liability Ass'n Corp. (1956), 230 La. 867, 89 So.2d 373; Spurlock v. Boyce-Harvey Machinery Inc. (La. App. 1956), 90 So.2d 417; Maryland Casualty Co. v. New Jersey Manufacturers Casualty Insurance Co. (1958), 28 N.J. 17, 145 A.2d 15; City of Albany v. Standard Accident Insurance Co. (1960), 7 N.Y.2d 422, 198 N.Y.S.2d 303, 165 N.E.2d 869; Greaves v. Public Service Mutual Insurance Co. (1959), 5 N.Y.2d 120, 181 N.Y.S.2d 489, 155 N.E.2d 390; Employers' Liability Assurance Corp. v. Liberty Mutual Insurance Co. (Ohio Com.Pl. 1959), 167 N.E.2d 142; Travelers Ins. Co. v. Buckeye Union Casualty Co. (Ohio Com.Pl. 1959), 160 N.E.2d 874; Cimarron Insurance Co. v. Travelers Insurance Co. (1950), 224 Or. 57, 355 P.2d 742.
[20] "For example, suppose A borrows B's car and while operating it negligently damages some other property of B [or negligently injures an employee of B]". 39 Texas L.R. 115, 119, n. 24.