## PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY *v.* BIERMAN ET AL.

[No. 387, September Term, 1971.]

*Decided July 11, 1972.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*B. Ford Davis,* with whom were *W. Hamilton Whiteford* and *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellant.

*Robert E. Cahill,* with whom were *David L. Snyder* and *Melnicove, Asch, Greenberg & Kaufman* on the brief, for Willard N. Lave, one of appellees. No brief filed on behalf of other appellees.

MCWILLIAMS, J., delivered the opinion of the Court.

On 27 June 1967 a large metal hopper, hanging from the boom of a crane, was being eased into place in a building on South Wolfe Street in Baltimore. The operation was being supervised by Willard N. Lave (Lave), a vice president of the contractor, Charles A. Gareis, Inc. (Gareis). The crane, owned by Arundel Crane Service

Corp. (Arundel), had been leased to Gareis. It had been manufactured by Koehring Company (Koehring) and it had been sold to Arundel by L. B. Smith, Inc. (Smith). Elmer C. Bierman, an ironworker and an employee of Gareis, was inside the hopper. Something gave way causing the hopper to drop from the boom of the crane. Bierman was tumbled about sustaining injuries for which he claimed and received workmen's compensation. The appellant (Penn National) which had issued a workmen's compensation policy to Gareis has paid and is paying the compensation benefits.

In March 1969 Bierman "individually and to the use of" Penn National sued Arundel for negligently "providing a crane which was not capable of handling the weight of the hopper" and which was otherwise defective. Arundel promptly impleaded Koehring, Smith and Lave, and Bierman thereupon amended his declaration to include them as parties defendant. Lave then called upon Penn National to defend him under a comprehensive liability policy it had issued to Gareis. In June 1970 Penn National, having refused both coverage and defense, filed its amended bill for a declaratory decree asking the court to construe the policy and to determine whether "Lave is an insured under the policy" and "whether coverage would be excluded under the personal injury claim of" Bierman.

The statement of facts (edited) which follows was agreed to by all of the parties:

> 1. On June 27, 1967, Bierman, an employee of Gareis, sustained an accidental injury arising out of and during the course of his employment with Gareis.
>
> 2. On June 27, 1967, Gareis had in force and effect a Workmen's Compensation policy issued by Penn National.
>
> 3. As a result of the accident, Bierman received Workmen's Compensation benefits from Gareis, through its Workmen's Compensation policy issued by Penn National.

4. There is presently pending in the Baltimore City Court a suit by Bierman to his own use and to the use of Penn National against Smith, Arundel, Koehring and Lave for damages arising out of the accident of June 27, 1967.

5. On June 27, 1967 Gareis also had in force and effect Comprehensive Liability Policy No. CL4 24 32 issued by Penn National.

6. Lave is an executive officer of the named insured, Gareis, and qualifies as an insured under the policy issued to Gareis.

The case came on for trial in June 1971 before Perrott, J., without a jury. In December Judge Perrott filed an order declaring that the policy afforded coverage to Lave "to the extent of the monetary limits therein set forth" in respect of Bierman's suit for damages. This appeal followed.

The provisions of the policy with which we shall be concerned are:

"Insuring Agreements"

* * *

"Coverage B—Bodily Injury Liability—Except Automobile. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."

* * *

"Exclusions

"This policy does not apply:

* * *

"(f) under coverages A and B, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemploy-

ment compensation or disability benefits law, or under any similar law;

* * *

"(h) under coverage B, except with respect to liability assumed by the insured under a contract as defined herein, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured;"

* * *

"Conditions"

* * *

"8. Severability of Interests. The term 'the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability."

Penn National argues here as it did below that, since "[t]he unqualified word 'insured' includes the named insured and also includes under . . . [Coverage B] any executive officer," subsections (f) and (h) of the "Exclusions" preclude liability. Lave contends (as do Arundel, Koehring and Smith) that the "Severability of Interests" clause requires a finding that the exclusions are to be applied only against the insured for whom coverage is sought. Because Bierman was not an employee of Lave (nor was Lave under obligation to pay workmen's compensation benefits) at the time of the accident, he (Lave) argues that Penn National must defend him. Since we seem never to have considered this question before, a review of the decisions of other courts will serve to inform our decision. The cases present a diversity of opinion. We find persuasive, however, the decisions of those courts which, in similar circumstances, have afforded coverage.

In undertaking the construction of contracts of insurance we must, if we can, ascertain the intention of

the parties from the policy as a whole. We do not follow the rule applied in many jurisdictions that, absent ambiguity, the policy is to be strictly construed against the insurer. *H. R. Weissberg Corp. v. N. Y. Underwriters Ins. Co.*, 260 Md. 417, 426 (1971) ; *Government Employees Ins. Co. v. DeJames*, 256 Md. 717, 720 (1970) ; *Allstate Ins. Co. v. Humphrey*, 246 Md. 492, 496 (1967) ; *Ebert v. Millers Mut. Fire Ins. Co.*, 220 Md. 602, 610-11 (1959). Here neither party asserts ambiguity and, indeed, Judge Perrott did not think the words "the insured" were susceptible of different meanings. We are of like mind. It is necessary, therefore, to view the policy in its entirety if the intention of the parties is to be ascertained. It seems to us that the "Severability of Interests" clause must govern here if it is to have any real effect. To hold otherwise, we think, would result in a failure to construe the policy as a whole and, indeed, to do so would be to run counter to what seems to be the clear trend of the weight of authority.

Prior to 1955 insurance policies did not contain "Severability of Interests" clauses. Exclusions similar to subsections (f) and (h), *supra,* were prevalent, however, and courts were frequently called upon to decide who was the insured for purposes of the exclusion. Even absent the "Severability of Interests" clause, the decisions are by no means uniform. *Compare, e.g., Ginder v. Harleysville Mut. Cas. Co.*, 49 F. Supp. 745 (E. D. Pa. 1942), *aff'd,* 135 F. 2d 215 (3d Cir. 1943), *and Kaifer v. Georgia Cas. Co.*, 67 F. 2d 309 (9th Cir. 1953), both affording coverage, *with Standard Sur. & Cas. Co. of N. Y. v. Maryland Cas. Co.*, 281 App. Div. 446, 119 N.Y.S.2d 795 (1953), denying coverage. Some policies, either originally or as a result of an unfavorable court decision, contained language denying coverage under such circumstances. These clauses usually were held sufficient to protect the insurer. *See, e.g., Malisfski v. Indem. Ins. Co. of North America*, 135 F. 2d 910 (4th Cir. 1943). The cases will be found in 50 A.L.R.2d 78, 97-104 (1956).

The advent of the "Severability of Interests" clauses

in 1955 served only to compound the difficulty courts were experiencing in deciding who was the insured under various provisions of comprehensive liability policies. As might be expected two positions evolved. *General Aviation Supply Co. v. Insurance Co. of North America,* 181 F. Supp. 380 (E. D. Mo. 1960), *aff'd* 283 F. 2d 590 (8th Cir. 1960), cited and to a large extent relied upon by Lave, took the position that where a policy of insurance contains a "Severability of Interests" clause such as the one in the case at bar, "the exclusion within the policy as to employees of the insured should be limited and confined to the employees of the employer who commits the tort or seeks protection." 181 F. Supp. at 384. Citing *Kaifer v. Georgia Cas. Co., supra,* the court felt that in setting forth exclusions the insurer should be specific and clear in its designations as to who is excluded. District Judge Weber went on to say:

> "The logical theory for the employee exclusion is to prevent employees of the tort feasor from suing his employer for injuries received thru his employer's negligence. A reason for this is that employees are usually covered by workmen's compensation and can recover from the employer, with or without negligence. When negligence is committed by other than his employer, the logic for the exclusion disappears. If the insurer wishes to further exclude its liability, it could clearly so state in its contract and its failure to do so should be strictly construed. Especially is this true when the policy contains a severability clause, for there it can be implied that the insurer is actually recognizing a separate obligation to others, distinct and apart from the obligation it owes to the named insured." 181 F. Supp. at 384.

*General Aviation, supra,* has been cited or relied upon by numerous courts reaching the same result. *See, e.g., Pepsi-Cola Bottling Co. v. Indemnity Ins. Co. of North*

*America*, 318 F. 2d 714 (4th Cir. 1963) ; *United States Fire Ins. Co. v. McCormick*, 286 Ala. 531, 243 So. 2d 367 (1970) ; *Shelby Mut. Ins. Co. v. Schuitema*, 183 So. 2d 571 (Fla. App. 1966), *aff'd* 193 So. 2d 435 (Fla. 1967) ; *Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.,* 274 N.E.2d 419 (Ind. 1971) ; *Liberty Mut. Ins. Co. v. Iowa Nat'l Mut. Ins. Co.,* 186 Neb. 115, 181 N.W.2d 247 (1970), for a few of the more recent cases. There are also several articles that support the position which was taken in *General Aviation*: Brown and Risjord, *Loading and Unloading: The Conflict Between Fortuitous Adversaries*, 29 Ins. Coun. J. 197 (1962) ; Risjord and Austin, *Who is "The Insured?"*, 24 U. of Kansas City L. Rev. 65 (1955) ; Risjord and Austin, *"Who is 'The Insured'"  Revisited*, 28 Ins. Coun. J. 100 (1961). In Gowan, *Provisions of Automobile and Liability Contracts*, 30 Ins. Coun. J. 96, 100 (1963), the author takes the following position in respect of "Severability of Interests" clauses:

> "All standard policies provide that the unqualified word 'insured' includes certain other persons or organizations called 'additional insureds.' However, the underwriters never intended that each time the single word 'insured' was encountered in the policy, it should be construed collectively as though it meant all possible insureds. To clarify this provision, in 1955 a new 'Condition' was inserted in the standard policies with respect to 'Severability of Interests.' The new Garage policy and subsequent policies including the Family Automobile Policy now provide that the insurance afforded 'applies separately to each insured against whom claim is made or suit is brought.' But, of course, it is not intended that the policy limits will be extended just because of the inclusion of several additional insureds in the grant of coverage."

While a few of the cases cited thus far may have been

decided, at least to some extent, in a climate where insurance contracts are strictly construed against the insurer, it is by no means clear that a different climate would have changed the results. Indeed, as we have pointed out, most courts now interpret "Severability of Interests" clauses as expressing an acknowledgment on the part of insurance companies that the term "insured" does not always mean *any* insured who could claim coverage under the policy but only the insured claiming coverage.

Some courts, however, have adopted the converse position that "[t]he clear and unambiguous terms of the policy" lead to a conclusion that "no employee of the named insured engaged in the insured's business can recover on the named insured's policy against anyone included as an additional insured." *Transport Ins. Co. v. Standard Oil Co. of Texas,* 161 Tex. 93, 101-2, 337 S.W.2d 284, 290 (1960). The reasoning found in *Transport,* relied upon by the appellant in the lower court, has been accepted by several courts. *See, e.g., Liberty Mut. Ins. Co. v. Imperial Cas. & Indem. Co.,* 168 So. 2d 688 (Fla. App. 1964). This decision has been questioned, however, if not overruled, by the Supreme Court of Florida. *See Shelby Mut. Ins. Co. v. Schuitema,* 193 So. 2d 435 (Fla. 1967). In *"Who is 'The Insured'" Revisited, supra,* the authors discussed *Transport* somewhat less than enthusiastically:

> "The last (hopefully) of the new 'no coverage' cases is the one which purported to follow Judge Brown. This was a declaratory judgment proceeding brought by an oil company against the automobile insurer of a truck to establish coverage for the oil company under the automobile policy for injury to the truck driver from an explosion at the loading docks of the oil company. The Court of Civil Appeals held that there was coverage for the oil company for injury to the employee of the named insured, espe-

cially because of the severability of interests provision in the automobile policy, distinguished *American Fidelity v. St. Paul-Mercury* as 'written without the application of the severability of interest clause,' and cited our second 'visit.'

The Supreme Court reversed, holding that notwithstanding the severability of interests clause, the 'weight of authority is that if the injured party is the employee of any person who is insured under the policy, the employee exclusion is applicable although the injured may not have been an employee of the person committing the tort' and, presumably, claiming coverage. The Supreme Court's opinion likewise cited our second 'visit' but pointed out that the cases cited in that article had been 'ably distinguished' by Judge Brown in *American Fidelity v. St. Paul-Mercury*. The Supreme Court went on to cite the cases which it felt supported its view, cited no cases to the contrary, and, while heavily relying, for Texas, upon Judge Brown's views in *American Fidelity v. St. Paul-Mercury* (which, as may be recalled, Judge Brown expressly limited to Alabama), failed to mention Judge Brown's later decision to the contrary pertaining to Louisiana." (Footnotes omitted.) *Id.* at 106, 107.

*Transport* finally met its doom in *Commercial Standard Ins. Co. v. American Gen. Ins. Co.,* 455 S.W.2d 714 (Tex. 1970), wherein it was expressly overruled. Justice McGee wrote for the court:

"Our decision in Transport Insurance Co. v. Standard Oil Co. of Texas, supra, failed to give proper emphasis to the 'severability of interests' clause. This fact, accompanied by many subsequent decisions specifically interpreting this clause, lead us to a different result. It was based on prior decisions involving policies that

did not contain the severability of interests clause. The Fifth Circuit, which wrote the opinion in American Fidelity & Casualty Co. v. St. Paul-Mercury Indemnity Co., supra, upon which this Court relied, has on three subsequent occasions indicated that the presence of the severability of interests provision in the case would have led the court to reach a different result. . . . *Transport* is overruled." 455 S.W.2d at 719-20.

We think it would serve little purpose to discuss each of the cases Penn National has cited in support of its contention. It suffices to say that we have read them all and that we are not persuaded. Some of them are clearly inapposite; the rest do not project, in our opinion, the more reasonable interpretation of the type of "Severability of Interests" clause involved in the case at bar. Obviously these provisions were inserted into insurance policies for some purpose. To reach the conclusion Penn National asks us to reach would make the clause useless. This we will not do.

*Judgment affirmed.*
*Costs to be paid by appellant.*