# Richmond

BANKERS & SHIPPERS INSURANCE COMPANY OF NEW YORK v. GARLON M. WATSON, ET AL.

UNITED STATES FIRE INSURANCE COMPANY v. BANKERS & SHIPPERS INSURANCE COMPANY OF NEW YORK, ET AL.

April 23, 1976.

Record Nos. 750642 and 750694.

Present, All the Justices.

*Donnell P. Davis* (*Furniss, Davis and Sachs,* on brief), for plaintiff in error in Record No. 750642.

*Rodham T. Delk, Jr.; Robert E. Gillette* (*Rodham T. Delk, Delk & Barlow,* on brief), for defendants in error in Record No. 750642.

*Rodham T. Delk, Jr.* (*Rodham T. Delk; Delk & Barlow,* on brief), for plaintiff in error in Record No. 750694.

*Robert E. Gillette; Donnell P. Davis* (*Furniss, Davis & Sachs,* on brief), for defendants in error in Record No. 750694.

*J. Carroll Fears, Jr.* and *James A. Howard,* for Criterion Insurance Company and Lumbermens Mutual Casualty Company in Record No. 750642 and Record No. 750694.

No briefs filed or oral arguments on behalf of Stanley G. Lowe, Administrator; Evelyn C. Carr, Administratrix; Bonney Motor Express, Inc., defendants in error in Record No. 750642 and Record No. 750694.

I'ANSON, C.J., delivered the opinion of the court.

This declaratory judgment proceeding was brought by Bankers & Shippers Insurance Company of New York (Bankers & Shippers) to determine its potential liability for wrongful death claims arising out of a collision between a tractor-trailer unit and an automobile in which Julian Russell Carr and Floyd Michael Carr were killed. Although both tractor and trailer were owned by Garlon M. Watson, trading as Windsor Granary (Watson), the tractor had been leased to Bonney Motor Express, Inc. (Bonney) and was covered by a "gross receipts" policy issued to Bonney by Bankers & Shippers. The trailer was covered in a fleet policy issued to Watson by United States Fire Insurance Company (U. S. Fire).[1] At the time of the accident, the tractor-trailer unit was driven by William Banks, Jr., an employee of Watson, with Watson's permission.

Through various pleadings U. S. Fire, Watson, Banks, the personal representatives of the decedents, and Lumbermens Mutual

---

1. Prior to this action, U. S. Fire paid $62,500 to the personal representatives of the decedents in settlement of their claims.

Casualty Company and Criterion Insurance Company, uninsured motorist carriers for the decedents, were made parties to the action. They also asked that their rights and liabilities be determined.

After hearing evidence, the trial court held Bankers & Shippers liable under its policy covering the tractor, and held U. S. Fire equally liable under its policy covering the trailer.

The evidence shows that Watson leased the tractor to Bonney by written agreement on October 16, 1972. Under that contract, and the separate lease agreement filed with the State Corporation Commission as required by Code § 56-287.2, it was agreed, *inter alia*, that the lease could be cancelled by either party "upon thirty (30) days' notice in writing to the State Corporation Commission;" that the leased vehicle "shall be operated by and under the complete control of the lessee, and no other, for the period of the lease, and for all purposes of insurance, regulation, taxes or otherwise considered as the vehicle . . . of the lessee;" that the lessor had the duty to maintain the vehicle in good repair; and that if the lessor failed to maintain the vehicle, the lease could be cancelled "forthwith" by lessee. Bonney also filed documents with the Interstate Commerce Commission which provided that Bonney would be responsible for the operation of the tractor and would abide by all ICC regulations for the duration of the lease.

Bonney affixed its name and permit numbers issued by the SCC and the ICC to the tractor and used the vehicle in its business until February 3, 1973. On that date, however, Watson reclaimed the tractor because he could not furnish Bonney a qualified driver, as required by the lease, and because he considered the lease financially unprofitable. Although the tractor was not used by Bonney after February 3, 1973, it continued to bear Bonney's advertising decals, as well as its SCC and ICC permit legends. When Watson used the tractor in his business, however, he covered Bonney's decals with removable placards reading: "Windsor Granary, Windsor, Virginia." Although the two businesses were geographically separated only by a vacant lot and Bonney's agents knew that Watson was using the tractor, Bonney did nothing to cancel the lease until long after the accident. The day prior to the accident, Michael J. Glenn, Bonney's vice president, talked with Watson about putting the vehicle back into use under the lease.

On the morning of March 9, 1973, Watson directed Banks to drive the tractor, with the Fruehauf trailer attached, to Franklin, Virginia,

to have the tractor's tires balanced and the front end adjusted. Banks was further instructed that, if time permitted after the repairs, he was to proceed to Sedley, Virginia, to pick up a load of corn for Watson's granary. The fatal accident occurred while Banks was en route to Franklin for the repairs.

In its policy with Bonney, Bankers & Shippers undertook to insure "all equipment owned and/or operated by [Bonney]," and to cover liability for bodily injury and property damage incurred by the "insured." Under the policy's Receipts Basis Truckmen endorsement, "insured" is defined as follows:

> ". . . the unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply:
>
> (a) except with respect to an employee of the named insured, to any person or organization, or to any agent or employee thereof, engaged in the business of transporting property by automobile for the named insured or for others (1) unless the accident occurs while such automobile is being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority, . . .
>
> provided, however, a driver or other person furnished to the named insured with an automobile hired by the named insured shall not be deemed an employee of the named insured. . . ."

Bankers & Shippers maintains that it cannot be held liable for the March 9, 1973 accident in that neither Watson nor Banks was an "insured" as defined in its policy with Bonney. This contention is based upon the argument that at the time of the accident, the tractor, although leased to Bonney, was not being used "exclusively in the business of the named insured." Rather, the tractor had been used exclusively by Watson in the conduct of his granary business since February 3, 1973. We do not agree with this contention.

The lease agreement between Bonney and Watson, as required by regulations of the State Corporation Commission, provided that the truck was to be considered the vehicle of the lessee "for all pur-

poses of insurance, regulation, taxes or otherwise," during the period of the lease. Although Watson resumed the use of the tractor, at the time of the accident the lease had not been terminated by the required thirty days' notice to the State Corporation Commission. Additionally, the lease agreement was subject to the regulations of the Interstate Commerce Commission, which required for its termination the removal of interstate permit numbers and the giving of a receipt by the owner showing that the tractor had been returned to him. 49 C.F.R. §§ 1057.4(b) and 1057.5(d)(1). The failure to comply with these regulations, as a matter of law, prevents cancellation of the lease and an avoidance of liability on the part of the lessee. *Mellon National Bank & Trust Co.* v. *Sophie Lines, Inc.,* 289 F.2d 473 (3rd Cir. 1961); *Cosmopolitan Mutual Ins. Co.* v. *White,* 336 F.Supp. 92 (D.Del. 1972).

Since Bonney failed to comply with the applicable state and federal regulations, we find that its lease with Watson was in full force and effect on the date of the accident. Hence, as a matter of law, Bonney is to be considered as the owner of the tractor and in full control of it on that date.

■ Under the Bankers & Shippers policy, any person or organization using the truck with Bonney's permission is an "insured" under the policy's omnibus clause. *See* Code §§ 38.1-381 (a) and (a2). Although Watson had taken possession of the tractor prior to the accident and had used it in his granary business, his use was with the knowledge and acquiescence of Bonney's agents, who did nothing to cancel the lease. Moreover, the primary purpose of Watson's use of the tractor on the date of the accident was to maintain it in good repair, a duty specifically imposed upon him by the lease agreement. Thus, through Bonney's acquiescence and because of the duties imposed upon Watson by the lease, Watson's use of the tractor at the time of the accident was with the permission of Bonney, the named insured. *See Aetna Casualty & Surety Ins. Co.* v. *Anderson,* 200 Va. 385, 390-91, 105 S.E.2d 869, 873-74 (1958); *Hinton* v. *Indemnity Ins. Co.,* 175 Va. 205, 213-14, 8 S.E.2d 279, 283 (1940).

We hold, therefore, that both Watson and Banks were "insureds" under the omnibus clause of the Bankers & Shippers policy issued to Bonney, and that its policy of insurance provided coverage for the claims arising out of the March 9, 1973 accident.

■ U. S. Fire contends that exclusion (c) in its policy issued to cover the Fruehauf trailer owned by Watson exempts it from liability

for the claims arising out of the March 9th accident. Exclusion (c) provides:

"This policy shall not apply: . . . under coverages (a) and (b), while the automobile is used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company; *or while any trailer covered by this policy is used with an automobile owned or hired by the insured and not covered by like insurance in the company;*" (Emphasis supplied).

U. S. Fire says that an "identical" exclusion clause was applied to deny coverage in *Welborn* v. *Wyatt*, 175 Va. 163, 7 S.E.2d 99 (1940). There, the insurance contract contained the provision that "this policy does not apply; under coverage (a) and (b) while the automobile is used for the towing of any trailer not covered by like insurance in the company or while any trailer covered by this policy is used with any automobile not covered by like insurance in the company." U. S. Fire's reliance on *Welborn* is misplaced since the two clauses are not identical. The clause in *Welborn*, as opposed to the exclusion here, did not contain the phrase "owned or hired by the insured." The key words in the exclusion clause before us are "the insured." Therefore, to determine whether U. S. Fire is exempted from liability, we must decide who is "the insured" within the meaning of the exclusion.

The following provisions of the policy are pertinent to this determination:

"III *Definition of Insured.*

"[a] With respect to insurance for bodily injury liability . . . the unqualified word 'insured' . . . includes the named insured and . . . any person while using the automobile [trailer] . . . provided the actual use . . . is by the named insured or . . . with [his] permission . . ."

and under

"*Conditions*

. . . .

"6. *Severability of Interests—Coverages A and B.*

"The term 'the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability."

U. S. Fire contends that the cases involving identical exclusion clauses support its position that the exclusion clause term "the insured" refers to *any* insured, named or additional, under the policy. Thus, it argues that both Watson and Banks were excluded from coverage. *Canal Insurance Company* v. *State Automobile Insurance Association*, 433 F.2d 373 (5th Cir. 1970); *Pennsylvania Th. and F. Mut. Cas. Ins. Co.* v. *Hartford Acc. and I. Co.*, 310 F.2d 618 (4th Cir. 1962); *Brady* v. *American Insurance Company*, 198 So.2d 907 (La. App. 1967).

On the other hand, Bankers & Shippers, Watson, Banks, Lumbermens Mutual and Criterion contend that the term "the insured," as used in the exclusion clause, must be examined by first applying the "severability of interests" test. Under this test, the term "the insured" is used restrictively and does not include all insureds. Rather, the term is used to refer to each insured as separate and distinct from every other insured, and to mean the person claiming coverage under the policy. Although they concede that, under the language of the clause, Watson is excluded, they argue that, since Banks neither owned nor hired the tractor, the exclusion is not applicable to him. In short, they contend that Banks must be considered separately to determine who is "the insured" under the exclusion.

We have not heretofore decided the effect of the severability of interest clause in the situation presented here. Hence, we review decisions from other jurisdictions.

Prior to 1955, insurance policies did not contain "severability of interests" clauses, and the courts were frequently called upon to determine who was "the insured" under exclusion clauses. The decisions were not uniform. After the advent of the severability of interest clauses in 1955, the issue was further complicated as to who was the insured, and two views emerged. *See Pennsylvania National Mut. Cas. Ins. Co.* v. *Bierman*, 266 Md. 420, 428, 292 A.2d 674, 677-78 (1972), and cases cited therein. However, "most courts now interpret 'Severability of Interests' clauses as expressing an acknowledgment on the part of insurance companies that the term 'insured' does not always mean *any* insured who could claim coverage under the policy but only the insured claiming coverage." *Bierman, supra,* 266 Md. at 428, 292 A. 2d at 678 (1972).

In *Shelby Mut. Ins. Co.* v. *Schuitema*, 183 So.2d 571 (Fla.App. 1966), *aff'd per curiam*, 193 So.2d 435 (Fla. 1967), the court held that, when a severability of interest clause is utilized in an insurance contract "which would or might apply to several insureds, the term

'the insured', as used in the exclusions and conditions of the policy, means only the person claiming coverage. ...." 183 So.2d at 573. The court further stated that the "effect of the severability of interests clause is to make it certain that, when a claim is asserted against one who is an insured under the policy, then that person becomes 'the insured' for the purpose of determining the insurer's obligations with respect to that claim." 183 So.2d at 574. *Accord, Float-Away Door Co. v. Continental Cas. Co.*, 372 F.2d 701, 708 (5th Cir.), *cert. denied*, 389 U.S. 823 (1967); *Pennsylvania National Mut. Cas. Ins. Co.* v. *Bierman, supra; Ratner* v. *Canadian Universal Insurance Co.*, 269 N.E.2d 227 (Mass. 1971); *Phoenix Assur. Co.* v. *Hartford Ins. Co.*, 488 P.2d 206 (Colo. App. 1971); *Commercial Standard Ins. Co.* v. *American General Ins. Co.*, 455 S.W.2d 714, 48 A.L.R.3d 1 (Tex. 1970); *cf. North River Ins. Co.* v. *Connecticut Fire Ins. Co.*, 233 F. Supp. 31, 38-39, *aff'd*, 341 F.2d 913 (4th Cir. 1964).

*Lackey* v. *Virginia Surety Co.*, 209 Va. 713, 167 S.E.2d 131 (1969), involved the construction of an exclusion clause in a policy written and delivered in Florida. We applied Florida law as explicated in *Schuitema, supra*, giving effect to the severability of interests clause. However, we did not decide as a matter of Virginia law whether a restrictive definition of the term "insured" was required by a severability of interests provision.

In *Lackey*, we also noted that there was a division of authority on the question here involved and cited *Transport Ins. Co.* v. *Standard Oil Co. of Texas*, 161 Tex. 93, 337 S.W.2d 284 (1960), as representing those jurisdictions giving no effect to the severability of interests clause. However, in *Commercial Standard Ins. Co.* v. *American General Ins. Co., supra*, the Texas court overruled *Transport*, and gave effect to the severability of interest clause. The court said:

"Although the unqualified words '*the insured*' are used, they can refer to the named insured and one or more additional insureds. The words do not always mean the named insured and one or more omnibus insureds; otherwise, we would be giving meaning to the word 'collectively' and ignoring the word 'severally.'

. . . .

"[T]he term 'the insured' as used in this policy must be examined by first applying the 'severability of interests' test. 'The insured' does not refer to all insureds; rather, the term is used to refer to each insured as a separate and distinct individual apart from any and every other person who may be entitled to coverage thereunder. When a

claim is made against one who is an 'insured' under the policy, the latter is 'the insured,' for the purpose of determining the company's obligations with respect to such claim. The only limitation in this clause is to the effect that the 'inclusion herein of more than one insured shall not operate to increase the limit of the company's liability.' " 455 S.W.2d at 721, 48 A.L.R.3d at 12.

We have read all the cases relied upon by U. S. Fire in support of its position and we are unpersuaded by them, since they either omit consideration of the severability of interests clause or are inapposite. In our view, no useful purpose would be served in discussing them.

Obviously, the severability of interests clause was placed in insurance policies for some purpose, and for courts to ignore that purpose would render the clause meaningless. If U. S. Fire had intended to exclude all insureds from coverage when a trailer was attached to an automobile [tractor] not insured by it, it could have done so in plain and simple language.

We think the better reasoned cases are those which give effect to severability of interests clauses and restrict "the insured" to the person claiming coverage. We find that Banks was an "insured," claiming coverage under the policy, and that he neither owned nor hired the tractor with its attached trailer insured by U. S. Fire. Thus, we hold that exclusion (c) is not applicable as to him.

For the reasons stated, the judgment in the court below declaring Bankers & Shippers and U. S. Fire equally liable under their policies for the March 9, 1973 accident is

*Affirmed.*